# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2012AP2557-CR |
| COMPLETE TITLE: | State of Wisconsin, <br>       Plaintiff-Respondent-Petitioner, <br>   v. <br>William F. Bokenyi, <br>       Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 349 Wis. 2d 528, 835 N.W.2d 292
(Ct. App. 2013 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 11, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 18, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Polk |
| JUDGE: | Molly E. GaleWyrick |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) <br> PROSSER, J., ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Jeffrey J. Kassel*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant, there was a brief by *Suzanne L. Hagopian*, assistant state public defender, and oral argument by *Suzanne L. Hagopian*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2557-CR
(L.C. No. 2010CF200)

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

    **v.**

**William F. Bokenyi,**

      **Defendant-Appellant.**

**FILED**

**JUL 11, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Bokenyi, No. 2012AP2557-CR, unpublished slip op. (Wis. Ct. App. June 18, 2013), which reversed the judgment and order of the Polk County Circuit Court[1] sentencing William F. Bokenyi ("Bokenyi") to prison and denying his motion for postconviction relief.

¶2 Bokenyi contends that, even though the State recommended a term of imprisonment which was consistent with the plea agreement, the State nonetheless materially and

---

[1] The Honorable Molly E. GaleWyrick presided.

substantially breached that agreement by implying that the court should impose a longer sentence. Bokenyi asserts that the prosecutor's comments during the sentencing hearing were inconsistent with the plea agreement.

¶3 Bokenyi also argues that he received ineffective assistance from his trial counsel, because counsel failed to object to the State's material and substantial breach of the plea agreement, and that his counsel also failed to consult with him as required under State v. Sprang, 2004 WI App 121, 274 Wis. 2d 784, 683 N.W.2d 522.

¶4 The State argues that the prosecutor's comments during the sentencing hearing did not constitute a material and substantial breach of the plea agreement. Alternatively, the State contends that Bokenyi's defense attorney was not ineffective for failing to object and asks this court to overrule Sprang.

¶5 We conclude that the prosecutor's comments during the sentencing hearing did not constitute a material and substantial breach of the plea agreement. As a result, we need not address Bokenyi's argument that his trial counsel was ineffective, nor must we consider the State's request that Sprang be overruled. We therefore reverse the decision of the court of appeals.

I. FACTUAL BACKGROUND

¶6 On August 1, 2010, Bokenyi was involved in a domestic dispute with his wife, Sherri Bokenyi ("Sherri"). After Bokenyi returned home from a poker game, Sherri informed Bokenyi that she would be leaving the following day to spend a week caring

for her elderly mother. Upon hearing this news, Bokenyi became upset and threatened to kill both Sherri and the couple's ten-year-old son.

¶7 In response to Bokenyi's threat, Sherri locked both herself and her son in a bedroom. Bokenyi, having armed himself with two kitchen knives, followed Sherri to the bedroom door and stated, "open the door, you fucking bitch." Sherri briefly opened the door, and upon seeing the knives barricaded herself in the room and called the police.

¶8 Officer Daniel Peters ("Officer Peters") responded to Sherri's call. On approaching the door to the apartment, Officer Peters heard Bokenyi shouting. Officer Peters knocked on the door and stated, "Police, open the door." Bokenyi responded, "Fuck you, you're going to have to come in and kill me." Despite his comment, Bokenyi did open the door, and Officer Peters observed him holding two knives. Officer Peters stated, "Police[,] get on the floor and drop the knives." Bokenyi responded to Officer Peters' command by stating, "Fuck you" and slamming the door. As Officer Peters called for back-up, he heard Bokenyi shout, "Fuck you, I'm going to kill you woman."

¶9 Officer Peters was then joined at the scene by several other officers, including Deputy Nathan Ferris ("Deputy Ferris") and Sergeant Michael Stoffel ("Sergeant Stoffel"). The officers together kicked in the door and entered Bokenyi's apartment. Upon entering, the officers once again commanded Bokenyi to drop the knives he was holding. When Bokenyi began walking toward

the officers, Deputy Ferris deployed his Taser. The Taser had no apparent effect on Bokenyi, and he continued to advance toward the officers. Sergeant Stoffel then fired at Bokenyi with his service pistol, striking Bokenyi. Bokenyi was subsequently transported to Regions Hospital in St. Paul, Minnesota.

## II. PROCEDURAL POSTURE

¶10 On August 5, 2010, the State filed a criminal complaint alleging ten counts against Bokenyi. The complaint alleged one count of first-degree reckless endangerment, contrary to Wis. Stat. § 941.30(1) (2009-10),[2] a Class F felony; two counts of felony intimidation of a victim, contrary to § 940.45(1), Class G felonies; one count of failing to comply with an officer's attempt to take a person into custody, contrary to § 946.415(2), a Class I felony; three counts of attempted battery of a peace officer, contrary to §§ 940.20(2) and 939.32, attempts to commit Class H felonies; one count of disorderly conduct as an act of domestic abuse, contrary to §§ 947.01 and 968.075(1)(a), a class B misdemeanor; one count of resisting an officer, contrary to § 946.41(1), a Class A misdemeanor; and one count of negligent handling of a weapon, contrary to § 941.20(1)(a), a Class A misdemeanor.

¶11 On August 31, 2010, Bokenyi made his initial appearance, received a copy of the criminal complaint, and

---

[2] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

requested a timely preliminary hearing. The court set bail at $25,000 cash.

¶12 On September 9, 2010, the court held Bokenyi's preliminary hearing. The court heard testimony from Sherri and Officer Peters regarding the incident. At the conclusion of the testimony, the court found probable cause and bound Bokenyi over for trial. The State filed an information which alleged the same ten counts against Bokenyi as charged in the criminal complaint. Bokenyi was then immediately arraigned on the information, and pled not guilty and not guilty by reason of mental disease or defect to all the charges.[3]

¶13 On September 30, 2011, Bokenyi pled guilty to three of the ten charges against him, pursuant to a plea agreement. As part of the plea agreement, Bokenyi pled guilty to one count of first-degree reckless endangerment, one count of felony intimidation of a victim, and one count of failing to comply with an officer's attempt to take a person into custody. In exchange for Bokenyi's pleas, the State agreed to dismiss and read in the remaining counts for sentencing purposes and limit its sentencing recommendation to "the high end range of the PSI." The court accepted Bokenyi's pleas, adjudged him guilty, and ordered a presentence investigation report ("PSI").

---

[3] Bokenyi was subsequently assessed by a mental health professional, who concluded both that he was competent to stand trial, and that he was able to "appreciate the wrongfulness of his conduct and was able to conform his conduct to the requirements of the law at the time of the commission of the criminal offenses for which he is charged."

¶14 On December 5, 2011, the PSI was filed with the circuit court. On the reckless endangerment count, the PSI recommended three to four years of initial confinement, to be followed by three to four years of extended supervision. On the failure to comply with a police officer and victim intimidation counts, the PSI recommended that the court withhold sentence and impose probation terms of three and five years, respectively. The PSI recommended that the probation terms be concurrent with one another, but consecutive to the sentence on the reckless endangerment count.

¶15 On January 23, 2012, the court held a sentencing hearing. Prior to offering argument on the sentence, the prosecutor read aloud a letter to the court from Sherri, the victim. Sherri's letter stated, in part:

> Myself and our son . . . are afraid for the day [Bokenyi] will get let out because we are unsure of what he would be capable of doing. I prefer that we could live fearlessly while our son . . . [who is] only 11 is growing and in school.

¶16 Following the reading of the letter, the State proceeded to make its sentencing argument. The State structured its argument around the sentencing factors found in <u>McCleary v. State</u>, 49 Wis. 2d 263, 182 N.W.2d 512 (1971), and <u>State v. Gallion</u>, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197. The State began by reiterating the seriousness of Bokenyi's convictions:

> The three convictions that he is being sentenced on today [are] a first[-]degree reckless endangerment, a 12 and a half year felony, and intimidation of a victim, a 10 year felony[,] and failure to comply with a law enforcement officer, a 3 and a half year felony.

I think the felony classifications obviously indicate the extreme seriousness of these offenses that night. But to be honest, I don't think they really do them justice in terms of how serious this was.

¶17 The State noted that, given Bokenyi's history of "homicidal thoughts or ideations" toward his family, the fact that the three felonies were "very serious crimes" did not reflect the seriousness of what "might have happened that night . . . ."

¶18 The State then addressed Bokenyi's character. The State noted Bokenyi's similar behavior during a prior incident, wherein police were forced to shoot him when he refused to drop a loaded shotgun. The State also discussed Bokenyi's seeming lack of remorse and the fact that he seemed "to have absolutely no clue as to the impact that this offense has had on his wife and child."

¶19 The State further noted that there was a need to protect the public from Bokenyi, stating:

> [T]here's the need to protect the public or the public's interest in rehabilitation of the defendant and I think this overwhelmingly comes down to the protection of the public interest. The protection of the public, being Sherry [sic] Bokenyi and their son. They have a right, as she says in her letter, to live fearlessly while their son is growing up and in school. She has a right to live not in fear that Mr. Bokenyi, when he gets out, is going to come looking for her and to finish what he's attempted at least one other time before.

¶20 Finally, the State noted some troubling behavior that Bokenyi had exhibited since his arrest:

> What is again perhaps the most frightening for me is to read an incident report from the Polk County

7

Jail on February 11th of 2011. A jailer . . . indicates that on the above date [she] was doing med pass in the maximum part of the jail. Inmate Bokenyi came out for the evening meds and [she] asked him how he was doing. He stated okay, but he was still here and that he could not wait for the time that he was out of here so he could quote "shoot up some cops" end quote. [The jailer] asked him why he would do that. He said they all deserved it. And making conversations with him [she] stated that wouldn't he rather just get out and enjoy being out then risk coming back in. He stated that next time he would not be coming back, and he would also shoot anyone who got in his way while he was shooting at the cops. There is an absolute necessity to protect the public from William Bokenyi.

¶21 The State concluded its argument with a sentencing recommendation that was, in fact, at the "high end range" of the PSI. Specifically, regarding the reckless endangerment count, the State recommended a term of imprisonment of eight years, consisting of four years of initial confinement to be followed by four years of extended supervision. The State further recommended that the court withhold sentence on the remaining counts and impose probation. The State recommended five years of probation on the victim intimidation count and three years on the failure to comply with an officer count. The State recommended that both probation terms be served concurrently with one another but consecutive to the sentence for the reckless endangerment count. All of the State's recommendations fell within the ranges recommended in the PSI.

¶22 Counsel for Bokenyi began his sentencing argument by stating "[w]ell, your Honor, it's hard to disagree with a lot of what [the State] has said here. [The State] laid out exactly I

8

think the facts that really establish and confirm . . . that Mr. Bokenyi is someone who suffers from severe mental illness." Bokenyi's attorney then detailed Bokenyi's mental health treatment history.[4] Bokenyi's counsel further argued that he had low risk factors for recidivism and was both educated and employable. In light of these considerations, Bokenyi's counsel asked the court to impose a sentence of 18 months of initial confinement, followed by a lengthy period of extended supervision. Further, counsel recommended, at Bokenyi's request, that Bokenyi be placed in a mental health facility as a condition of his extended supervision in order to ensure that he would not be a danger to himself or others on his release.

¶23 The court then sentenced Bokenyi to concurrent prison terms which were longer than that recommended by the State. On the reckless endangerment count, the court imposed a term of imprisonment of twelve years and six months, with seven years and six months of initial confinement to be followed by five years of extended supervision. On the intimidation of a victim count, the court imposed a sentence of ten years, with five years of initial confinement to be followed by five years of extended supervision. On the failure to comply with an officer count, the court imposed a sentence of two years, with one year of initial confinement to be followed by one year of extended supervision.

---

[4] Counsel did concede, however, that Bokenyi remained criminally responsible for his actions.

¶24 On September 10, 2012, Bokenyi filed a postconviction motion, pursuant to Wis. Stat. § 809.30(2)(h). In his postconviction motion, Bokenyi argued that the State breached the plea agreement in three ways during its sentencing argument. First, Bokenyi contended that the State breached the plea agreement when the prosecutor commented that the felony classifications did not do justice to the seriousness of Bokenyi's crimes. Second, Bokenyi argued that the State breached the plea agreement when the prosecutor repeated statements from the victim's letter to the court during his sentencing argument. Third, Bokenyi argued that the State breached the plea agreement when the prosecutor recounted the jail incident report in a manner suggesting that the sentence recommended as part of the plea agreement was insufficient.

¶25 Bokenyi conceded that he had forfeited his right to directly challenge the State's alleged breaches, but argued that his trial counsel had been ineffective for failing to object and for failing to confer with Bokenyi regarding the alleged breaches. See Sprang, 274 Wis. 2d 784, ¶¶28-29. Bokenyi requested that he be resentenced before a new judge and that the court order a Machner hearing on his ineffectiveness claim. See State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶26 On November 5, 2012, the court held a hearing on Bokenyi's postconviction motion. Bokenyi's trial counsel testified at the hearing that the reason he had not objected to the prosecutor's comments was because he did not believe that

10

the State had breached the plea agreement during its sentencing argument. Counsel testified that his strategy at the sentencing hearing was to use the "bad facts" of the case, which counsel testified were "well-known to everybody," to try and argue in favor of mental health treatment and against a lengthy prison sentence. Counsel further testified that he had read the hearing transcript and while "prosecutors say things every day in sentencing arguments that I don't agree with, . . . I didn't see it as being any kind of secret code to anyone that the court shouldn't follow the plea agreement."

¶27 After counsel's testimony, the court heard argument on Bokenyi's postconviction motion. Bokenyi argued that, although the State "technically" complied with the plea agreement and much of what the prosecutor discussed was "fair game," the three instances referenced in his brief were material and substantial breaches of the plea agreement and a new sentencing hearing was required.

¶28 The State argued that none of the statements discussed by Bokenyi constituted a material and substantial breach of the plea agreement. The State argued that the seriousness of a given offense is a factor to be considered on sentencing under McCleary and Gallion, and that the prosecutor's discussion of the felony classifications for the offenses did not relate to the maximum penalties that could be imposed. See McCleary, 49 Wis. 2d 263; Gallion, 270 Wis. 2d 535. The State further argued that the prosecutor's reference to the victim's letter was entirely appropriate and, contrary to Bokenyi's assertion, did

11

not "covertly" communicate a higher sentencing recommendation. Finally, the State argued that the prosecutor had read the jailer's report verbatim and used Bokenyi's own words to illustrate his conduct, neither of which undermined the sentencing recommendation.

¶29 The circuit court denied Bokenyi's request for postconviction relief. The court first noted that, had counsel contemporaneously objected, it likely would have overruled the objection. The court then concluded, relying on State v. Liukonen, 2004 WI App 157, 276 Wis. 2d 64, 686 N.W.2d 689, and State v. Ferguson, 166 Wis. 2d 317, 479 N.W.2d 241 (Ct. App. 1991), that the prosecutor's comments at the sentencing hearing did not constitute a material and substantial breach of the plea agreement.

¶30 With respect to the first alleged breach, the court agreed with the State and concluded that the prosecutor was "not talking about the 26 years not doing justice to the crimes. He's talking about . . . the A through I classification system not doing justice to how serious the conduct was in this particular case."

¶31 With respect to the second alleged breach, the court conceded that the better practice would have been to have someone other than the prosecutor read the victim's letter aloud, but the court nonetheless concluded that the prosecutor was entitled to reference the victim's letter during his argument. The court stated "Wisconsin has a tradition . . . of putting great emphasis on victim's rights" and that "there's

12

penalties if we violate victim's rights." The court concluded that restating the victim's wishes "without augmenting them in some fashion, without increasing them in some way" did not constitute a material and substantial breach of the plea agreement.

¶32 Finally, with respect to the third alleged breach, the court concluded that the prosecutor was permitted to bring relevant negative information to the court's attention. The court noted that the prosecutor brought relevant positive information to the court's attention as well, including Bokenyi's education, work history, and lack of drug or alcohol dependency. As a result, the court denied Bokenyi's postconviction motion.

¶33 On November 15, 2012, Bokenyi appealed. Before the court of appeals, Bokenyi again argued that the State had materially and substantially breached the plea agreement, and that his trial counsel had been ineffective for failing to object to the breach or consult with Bokenyi.

¶34 The State raised substantially the same arguments before the court of appeals as it had before the circuit court.

¶35 On June 18, 2013, the court of appeals reversed the circuit court and remanded the case for resentencing before a new judge. Bokenyi, No. 2012AP2557-CR, unpublished slip op., ¶1. The court of appeals concluded that the prosecutor's sentencing argument materially and substantially breached the plea agreement, and that Bokenyi's trial counsel was ineffective for failing to object. Id.

13

¶36 On July 9, 2013, the State petitioned this court for review, which we granted on December 6, 2013.

### III. STANDARD OF REVIEW

¶37 "The terms of [a] plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact." State v. Williams, 2002 WI 1, ¶5, 249 Wis. 2d 492, 637 N.W.2d 733 (citing State v. Wills, 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995)). "An appellate court reviews the circuit court's findings of fact under the clearly erroneous standard of review." Id.; see also Wis. Stat. § 805.17(2).

¶38 Whether the State's conduct "constitutes a material and substantial breach of a plea agreement is a question of law that we review de novo." State v. Deilke, 2004 WI 104, ¶10, 274 Wis. 2d 595, 682 N.W.2d 945 (citing Williams, 249 Wis. 2d 492, ¶5; Wills, 193 Wis. 2d at 277).

### IV. ANALYSIS

¶39 "Plea agreements are 'an essential component of the administration of justice.'" Deilke, 274 Wis. 2d 595, ¶11 (quoting Santobello v. New York, 404 U.S. 257, 260 (1971)). "Once a plea agreement has been reached and a plea made, a defendant's due process rights require the bargain be fulfilled." Id. (citing Williams, 249 Wis. 2d 492, ¶37; State v. Matson, 2003 WI App 253, ¶16, 268 Wis. 2d 725, 674 N.W.2d 51). "It is well established, however, that the sentencing court is not in any way bound by or controlled by a plea agreement between the defendant and the state." State v.

14

McQuay, 154 Wis. 2d 116, 128, 452 N.W.2d 377 (1990) (citation omitted).

¶40 Further, "[n]ot all conduct that deviates from the precise terms of a plea agreement constitutes a breach that warrants a remedy." Deilke, 274 Wis. 2d 595, ¶13 (citing State v. Bangert, 131 Wis. 2d 246, 290, 389 N.W.2d 12 (1986)). "In order for a court to vacate a plea agreement, the breach [of the plea agreement] must be material and substantial." Id. (citations omitted). "A material and substantial breach of a plea agreement is one that violates the terms of the agreement and defeats a benefit for the non-breaching party." Id., ¶14 (citations omitted).

¶41 It is axiomatic that "[a] prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement." Williams, 249 Wis. 2d 492, ¶38 (citation omitted); see also Santobello, 404 U.S. at 262. In the case at issue, however, it is undisputed that the prosecutor's ultimate sentencing recommendation of four years of initial confinement followed by four years of extended supervision and a five-year probation term was consistent with the plea agreement, because it was within the "high end range" of the sentence suggested in the PSI.

¶42 Bokenyi nonetheless argues that the prosecutor materially and substantially breached the plea agreement by making comments that undermined his recommendation and implicitly encouraged the judge to impose a sentence that was

15

longer than agreed upon, that is, longer than the "high end range" of the PSI.

¶43 It is certainly true that "'[e]nd runs' around a plea agreement are prohibited." Williams, 249 Wis. 2d 492, ¶42 (citing State v. Hanson, 2000 WI App 10, ¶24, 232 Wis. 2d 291, 606 N.W.2d 278). "The State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." Id. (quoting Hanson, 232 Wis. 2d 291, ¶24; citing Ferguson, 166 Wis. 2d at 322).

¶44 It bears noting, however, that a prosecutor may not "agree to keep relevant information from the sentencing judge." Williams, 249 Wis. 2d 492, ¶43 (citing State v. Neuser, 191 Wis. 2d 131, 139, 528 N.W.2d 49 (Ct. App. 1995)). "At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot be immunized by a plea agreement between the defendant and the State." Id. (citing Elias v. State, 93 Wis. 2d 278, 285, 286 N.W.2d 559 (1980)).

¶45 Thus, while a prosecutor at a sentencing hearing must walk "a fine line," id., ¶44 (citing Hanson, 232 Wis. 2d 291, ¶27), "[a] prosecutor may convey information to the sentencing court that is both favorable and unfavorable to an accused, so long as the State abides by the plea agreement." Id.

¶46 Bokenyi contends that at the sentencing hearing the State stepped over that "fine line" and materially and substantially breached the plea agreement in three respects. First, Bokenyi argues that the prosecutor's comment that the

16

felony classifications did not do justice to the seriousness of Bokenyi's offenses was a breach of the plea agreement. Second, Bokenyi contends that the prosecutor's discussion of the victim's letter was a breach of the plea agreement. Finally, Bokenyi asserts that the prosecutor's comments regarding the jail incident report constituted a breach of the plea agreement.

¶47 In the following analysis we address Bokenyi's arguments. We reject each of these arguments and conclude that the prosecutor did not materially and substantially breach the plea agreement.

## A. Felony Classifications

¶48 Bokenyi argues that the prosecutor materially and substantially breached the plea agreement when, after reciting the maximum penalties applicable to Bokenyi's convictions, he stated, "I think the felony classifications obviously indicate the extreme seriousness of these offenses that night. But to be honest, I don't think they really do them justice in terms of how serious this was."

¶49 As an initial matter, we note that a discussion of the seriousness of the defendant's conduct, even in "harsh terms," is entirely appropriate. Liukonen, 276 Wis. 2d 64, ¶10 (citing Ferguson, 166 Wis. 2d at 319-20, 325). In fact, we have stated that probation is presumed to be the appropriate disposition of a given case unless the circuit court makes findings indicating that "confinement is necessary to protect the public, the offender needs correctional treatment available only in confinement, or [probation] would unduly depreciate the

17

seriousness of the offense." Gallion, 270 Wis. 2d 535, ¶44 (citing Bastian v. State, 54 Wis. 2d 240, 248-49 n.1, 194 N.W.2d 687 (1972)). Thus, because the State needed to overcome the presumption of probation in arguing for a sentence at the "high end range" of the PSI, the State was compelled to address why a prison term was warranted.

¶50 The prosecutor in the case at issue explicitly tied his sentencing argument to the sentencing factors discussed in Gallion. He also explicitly stated that his discussion of the maximum penalties and felony classifications went to the "seriousness" or "gravity" of Bokenyi's offenses.

¶51 In attempting to overcome the presumption in favor of probation, the maximum penalties associated with a particular crime are clearly relevant information. The State is therefore free to discuss them, so long as that discussion does not undermine the plea agreement. See Ferguson, 166 Wis. 2d at 324 (citation omitted) (noting that "[a] plea agreement which does not allow the sentencing court to be apprised of relevant information is void as against public policy").

¶52 Bokenyi concedes that the prosecutor was free to recite the maximum penalties and further concedes that he was permitted to discuss the seriousness of Bokenyi's offenses. In coupling his recitation of the maximum penalties with his comment regarding the classifications, however, Bokenyi contends that the prosecutor covertly suggested that the agreed upon sentence was insufficient given Bokenyi's conduct. In making this argument, Bokenyi asserts that Wisconsin's felony

18

classification system exists only to specify the maximum penalties for a given offense, and so a reference to the classification of a crime is essentially the same as a reference to the maximum penalty applicable to that crime. We disagree.

¶53 Bokenyi is correct that the classification system exists to ensure the imposition of more serious penalties for more serious crimes. See Wis. Stat. § 939.50(2). The structure of the classification system, however, reflects the gravity of the crimes. As the Legislative Council notes following § 939.50 state: "[T]he Act classifies the criminal offenses based on the degree of actual or potential harm involved in their commission." Legislative Council Note, 1977, Wis. Stat. § 939.50. The fact that more serious crimes generally warrant more serious penalties is without question. It is also generally understood that within that structure there is room for a court to exercise its discretion. See Gallion, 270 Wis. 2d 535, ¶17. In fact, it is incumbent upon a court to create a record "detailing the reasons for selecting the particular sentence imposed" and stating why it is appropriate. Id., ¶24. Finally, the State did not recommend a sentence anywhere close to the maximum allowable penalties.

¶54 In light of these considerations, we conclude that the prosecutor's comment regarding the felony classification system referred to the seriousness of Bokenyi's conduct in this particular case as it related to the crimes charged and overcoming the presumption of probation. Thus, the prosecutor did not imply that the court should disregard the State's

19

sentencing recommendation and instead impose a sentence at or near the maximum allowable for Bokenyi's offense.

¶55 In sum, the prosecutor discussed the seriousness of Bokenyi's offenses as a proper factor for the court to consider at sentencing.  See Gallion, 270 Wis. 2d 535, ¶44.  The felony classification discussion was one way to communicate the State's position regarding the seriousness of the offenses.  This prosecutor did not breach the plea agreement, either explicitly or implicitly, by emphasizing the seriousness of the crimes committed by the defendant.  See Liukonen, 276 Wis. 2d 64, ¶10. The plea agreement called for the prosecutor to recommend a sentence consistent with the "high end range" of the PSI.  The high end called for a significant prison sentence.  Thus, under the plea agreement, the prosecutor was obliged to argue that this was a serious offense that warranted prison time.

¶56 Our conclusion is in accord with the circuit court's finding at the postconviction hearing that "[the prosecutor is] not talking about the 26 years not doing justice to the crimes. He's talking about . . . the A through I classification system not doing justice to how serious the conduct was in this particular case."[5]  We agree with the circuit court.[6]

---

[5] Judge GaleWyrick presided over both the sentencing and postconviction hearings, and so was personally present for the prosecutor's sentencing argument.

20

¶57 Thus, the prosecutor's emphasis on the seriousness of Bokenyi's crimes, considered in the full context of his sentencing argument, did not constitute a material and substantial breach of the plea agreement.

## B. Victim's Letter

¶58 Bokenyi next argues that the prosecutor materially and substantially breached the plea agreement when he referenced the victim's letter in his sentencing argument. Bokenyi concedes that the initial reading of the victim's letter was not a breach, but instead argues that the prosecutor's subsequent reference to the letter during his argument was a material and substantial breach of the plea agreement. Bokenyi's argument, however, fails to acknowledge how very important victims' rights are within our criminal justice system. A crime victim has the right to express his or her views at sentencing and that need not be kept in a vacuum. Wis. Stat. § 972.14(3)(a). Commentary on and consideration of the victim's recommendations by counsel and the court may be warranted. The victim holds a special place within the public, and the need to protect the public is certainly a factor for the circuit court's consideration. See Gallion, 270 Wis. 2d 535, ¶44.

---

[6] In reviewing a circuit court's decision on ineffective assistance of counsel "this court will not exclude the circuit court's articulated assessments of credibility and demeanor, unless they are clearly erroneous." State v. Carter, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695 (citing State v. Thiel, 2003 WI 111, ¶23, 264 Wis. 2d 571, 665 N.W.2d 305).

21

¶59 The Wisconsin Constitution declares that "[t]his state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy."  Wis. Const. art. I, § 9m.  Among the crime victim rights secured by the Wisconsin Constitution is "the opportunity to make a statement to the court at disposition" of a criminal case.  Id.

¶60 The legislature has similarly declared an intent "to ensure that all victims . . . of crime are treated with dignity, respect, courtesy and sensitivity," and that their rights "are honored and protected by law enforcement agencies, prosecutors and judges in a manner no less vigorous than the protections afforded criminal defendants."  Wis. Stat. § 950.01.

¶61 In accordance with this stated intent, crime victims are entitled by statute to "confer with the district attorney concerning the prosecution of the case and the possible outcomes of the prosecution, including potential plea agreements and sentencing recommendations."  Wis. Stat. § 971.095(2).  Further, "[a]fter a conviction, if the district attorney knows of a victim of a crime to be considered at sentencing, the district attorney shall make a reasonable attempt to contact that person to inform him or her of the right to make or provide a statement" to the court.  Wis. Stat. § 972.14(3)(b).  In fact, if a prosecutor fails to comply with the Crime Victim Rights Act, he or she can be fined.  Wis. Stat. § 950.11.

¶62 Before pronouncing sentence, the circuit court is also required by statute to "inquire of the district attorney whether he or she has complied" with the requirements of the crime

22

victim rights laws. Wis. Stat. § 972.14(2m). The court is further required to "determine whether a victim of a crime considered at sentencing wants to make a statement to the court." Wis. Stat. § 972.14(3)(a). "If a victim wants to make a statement, the court shall allow the victim to make a statement in court or to submit a written statement to be read in court." Id. The statute does not specify any particular party to read the statement. In fact, the sole limitation on the victim's statement is that it be "relevant to the sentence." Id. Again, if a judge does not ensure compliance with the victims' rights statutes, the judge can be fined. Wis. Stat. § 950.11.

¶63 Thus, victims' rights play an important role within our criminal justice system. In the case at issue, not only was it proper for the victim's letter to be read, the law required that it be read. Wis. Stat. § 972.14(3)(a); State v. Harvey, 2006 WI App 26, ¶42, 289 Wis. 2d 222, 710 N.W.2d 482. The court was required to consider "'the gravity and nature of the offense, including the effect on the victim'" in crafting an appropriate sentence. State v. Naydihor, 2004 WI 43, ¶78, 270 Wis. 2d 585, 678 N.W.2d 220 (citations omitted) (emphasis in original). The law does not preclude acknowledgment or commentary regarding the victim's wishes, and it does not prohibit the prosecutor from reading the victim's letter to the court.

¶64 Because victim rights compliance is essential to the sentencing hearing and the factors that a court must weigh in

23

exercising its discretion, consideration of and commentary regarding the victim's wishes may be relevant and appropriate at the sentencing. See Wis. Stat. § 972.14(3)(a); Williams, 249 Wis. 2d 492, ¶¶42-43 (citations omitted) (stating that a prosecutor may not "agree to keep relevant information from the sentencing judge"). A prosecutor's reference to a victim's letter will not automatically operate as a breach of the plea agreement. In fact, a victim's wishes may often come to bear in considering the need to protect the public.

¶65 Bokenyi argues, however, that the prosecutor went beyond reciting the victim's wishes and instead adopted them as his own. Bokenyi asserts that the victim's request that she and her son be allowed to "live fearlessly" while her 11-year-old son "is growing and in school" was, in effect, a request for a seven-year initial confinement period. Although the victim never requested any specific sentence, Bokenyi reasons that "in school" meant until the son turned 18 years old. Bokenyi argues that when he repeated the victim's request during his sentencing argument, the prosecutor implied that the judge should sentence Bokenyi to an initial confinement period longer than the four years recommended in the PSI. We reject this argument.

¶66 As discussed, the plea agreement called for the State to make a recommendation "at the high end range of the PSI." The PSI recommended a sentence of three to four years of initial confinement, followed by three to four years of extended supervision and a three- to five-year probation term. The State in fact recommended a sentence of four years initial

24

confinement, followed by four years of extended supervision and probation on the other counts. Thus, the State's recommendation was consistent with the "high end range" of the PSI and was therefore consistent with the plea agreement.[7]

¶67 As the circuit court noted during the postconviction hearing, the prosecutor was entitled to reference the victim's letter to the court. The court further concluded that restating the victim's wishes "without augmenting them in some fashion, without increasing them in some way" did not constitute a material and substantial breach of the plea agreement. We agree.

¶68 The prosecutor's statement does not translate into a request for a longer sentence. The prosecutor used the letter as a way to illustrate "the need to protect the public" from Bokenyi, a proper factor for consideration at sentencing. See Gallion, 270 Wis. 2d 535, ¶44. Further, the prosecutor recommended a term of imprisonment of eight years, that being four years of initial confinement to be followed by four years of extended supervision. The recommendation was consistent with the "high end range" of the PSI, consistent with the terms of

---

[7] Notably, the State's recommended sentence was also longer than would have been required to keep Bokenyi under supervision through his son's 18th birthday. While we recognize that the sentence would not necessarily have kept Bokenyi incarcerated for the duration of that period, extended supervision serves as a real and substantial deterrent, given that any misconduct by Bokenyi during his extended supervision period could result in his return to prison. Wis. Stat. § 973.01(8).

the plea agreement, and seemingly consistent with the victim's wishes.

¶69 It was incumbent on both the court and the prosecutor to ensure compliance with the victims' rights statutes. The victim did not make a specific sentencing recommendation, other than to reasonably request that she and her son be allowed to feel safe while her son was in school. As a result, the victim's wishes were not necessarily at odds with the State's sentencing recommendation. In fact, the State's recommendation of imprisonment for eight years could actually result in Bokenyi being in prison or under supervision for significantly longer than eight years.[8]

¶70 Thus, considering the totality of the prosecutor's argument, we do not conclude that the State materially and substantially breached the plea agreement when it referenced the victim's letter.[9]

### C. Post-Custody Behavior

---

[8] Defendants are advised at the time of sentencing that the amount of time he or she must actually serve in prison may be extended as provided in Wis. Stat. § 302.113(3), and that because of such extensions the person "could serve the entire bifurcated sentence in prison." Wis. Stat. § 973.01(8)(a)4. Wisconsin Stat. § 302.113(3) provides that, if an inmate "violates any regulation of the prison or refuses or neglects to perform required or assigned duties," the Department of Corrections may extend the inmate's term of confinement.

[9] Further, even if we accepted Bokenyi's reading of the prosecutor's reference to the letter, a defendant is entitled to resentencing only if a breach is not "merely a technical breach." Williams, 249 Wis. 2d 492, ¶38.

26

¶71 Bokenyi also argues that the prosecutor materially and substantially breached the plea agreement when he referred to a jail incident report as "most frightening." Bokenyi claims that the prosecutor's editorial comment undercut the negotiated recommendation. Bokenyi's argument fails because the incident report is relevant information for a court to consider when addressing the need to protect the public. The comment was not an effort to urge the court to impose a sentence on the defendant beyond that being recommended by the State.

¶72 "At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot be immunized by a plea agreement between the defendant and the State." Williams, 249 Wis. 2d 492, ¶43 (citing Elias, 93 Wis. 2d at 285). "[P]lea agreements where the prosecution agrees not to reveal information that is relevant to sentencing are against public policy and will be rejected by the courts." Id., ¶63 (citing Grant v. State, 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976)).

¶73 Further, "nothing prevents a prosecutor from characterizing a defendant's conduct in harsh terms, even when such characterizations, viewed in isolation, might appear inconsistent with the agreed-on sentencing recommendation." Liukonen, 276 Wis. 2d 64, ¶10 (emphasis in original). The prosecutor must simply refrain from making "comments that suggest the prosecutor now believes the disposition he or she is recommending pursuant to the agreement is insufficient." Id., ¶11.

27

¶74 For example, in Ferguson the defendant pled guilty to having sexual contact with a minor, pursuant to a plea agreement. 166 Wis. 2d at 319. The plea agreement provided that the State would recommend imposed and stayed sentences on the two charges, 20 years probation, and two consecutive six-month county jail terms as a condition of probation. Id. At the sentencing hearing, the prosecutor described the offenses as "the most perverted of all perverted sex acts" and stated, "this is the sickest case that I have seen or read about. If I refer to this defendant as 'sleaze,' I think that would be giving him a compliment." Id. at 319-20. Because the prosecutor also made the agreed upon sentencing recommendation, however, the court of appeals concluded that the prosecutor's remarks did not amount to a breach of the plea agreement in spite of the greater than normal "vitriol" displayed by the prosecutor. Id. at 325.

¶75 Similarly, in Naydihor, the defendant pled guilty to injury by intoxicated use of a motor vehicle, pursuant to a plea agreement. 270 Wis. 2d 585, ¶3. The plea agreement provided that the State would recommend probation but "retain[] a free hand on the conditions of that probation." Id. At the sentencing hearing, the prosecutor repeatedly referred to the defendant as a "danger" and a "threat to the community." Id., ¶13. The prosecutor also discussed the devastating impact that the crime had had on the victim, who had been confined to a wheelchair by the incident. Id. This court concluded that because "[t]he information the prosecutor discussed constituted no more than pertinent behavioral characteristics and

28

aggravating factors relevant to sentencing," the prosecutor's comments were not a material and substantial breach of the plea agreement. Id., ¶27.

¶76 By contrast, in Liukonen, the court of appeals concluded that the prosecutor's sentencing argument did constitute a material and substantial breach of a plea agreement. In Liukonen, the defendant was charged with four robberies using a handgun. 276 Wis. 2d 64, ¶2. The defendant pled guilty, pursuant to a plea agreement. Id., ¶3. In exchange for the defendant's pleas, the prosecutor agreed to limit his sentence recommendation to a total of 17 years of incarceration. Id. At the sentencing hearing, however, the prosecutor stated that he had reflected on the facts of the case and had concluded that his sentence recommendation gave the defendant "'a tremendous break from the system.'" Id., ¶15. Despite the fact that the prosecutor also made the agreed upon recommendation, the court of appeals determined that such a comment "'implicitly suggests that [the prosecutor] has changed [his] mind about [his] recommendation.'" Id. (quoting Williams, 249 Wis. 2d 492, ¶71 (Wilcox, J., concurring in part, dissenting in part)). The court of appeals determined that such a comment was a material and substantial breach of the plea agreement. Id., ¶17.

¶77 In the case at issue, the prosecutor in no way undermined or distanced himself from a recommendation at the "high end range" of the PSI. The prosecutor's quotation of the jail incident report supplied the court with relevant

29

information which the prosecutor explicitly tied to a proper sentencing factor: the "need to protect the public from William Bokenyi." The prosecutor's comment that the report was "frightening" was, at most, an editorial comment akin to those made in Ferguson and Naydihor. Further, immediately after discussing the jail incident report, the prosecutor explicitly endorsed a sentence that comported with the plea agreement. The prosecutor in the case at issue in no way expressed second thoughts about the agreement with the defendant, nor did he express any indication that he thought the defendant was getting an undeserved "break" from the system, as in Liukonen. If anything, counsel should feel the compunction to advise the court of relevant information regarding the defendant's conduct.

¶78 Thus, in the case at issue, the prosecutor's discussion of the jail incident report did not materially and substantially breach the plea agreement.

## V. CONCLUSION

¶79 We conclude that the prosecutor's comments during the sentencing hearing did not constitute a material and substantial breach of the plea agreement. As a result, we need not address Bokenyi's argument that his trial counsel was ineffective, nor must we consider the State's request that Sprang be overruled. We therefore reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶80 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* I join Justice Prosser's dissent. I write to point out that this review should be dismissed as improvidently granted,[1] and that if review is granted, the prosecutor materially and substantially breached the plea agreement.

¶81 The majority opinion does not decide the issue that was the subject of the State's petition for review, and the State conceded in its petition for review that "although it disagree[d] with the court of appeals' resolution" of "whether the prosecutor's sentencing argument breached the plea agreement," the issue of whether the prosecutor materially and substantially breached the plea agreement "standing alone, likely would not warrant supreme court review."[2]

I

¶82 The State sought review, asking this court to decide whether State v. Sprang, 2004 WI App 121, ¶2, 274 Wis. 2d 784, 683 N.W.2d 522, a court of appeals decision, should be overturned.

---

[1] "In the end, this review is more about error correction than law development and more about the significance of undisputed facts than about a need to clarify the law." State v. Gajewski, 2009 WI 22, ¶11, 316 Wis. 2d 1, 762 N.W.2d 104 (per curiam).

See also Nedvidek v. Kuipers, 2009 WI 44, ¶4, 317 Wis. 2d 340, 766 N.W.2d 205 (dismissing petition for review as improvidently granted "because the issues for which we took the case do not present any novel questions or lead to the development of the law").

[2] State's Petition for Review and Appendix at 4.

1

¶83 Sprang concluded that it is "tantamount to entering a renegotiated plea agreement without [the defendant's] knowledge or consent" if defense counsel fails to consult with the defendant about counsel's decision not to object to a prosecutor's sentencing remarks that breach a plea agreement.[3]

¶84 The majority opinion does not address the Sprang issue. Rather, the only issue the majority opinion addresses is the application of the test set forth in State v. Williams, 2002 WI 1, ¶¶38, 43-44, 249 Wis. 2d 492, 637 N.W.2d 733, to determine whether the prosecutor's remarks at sentencing materially and substantially breached the plea agreement.

¶85 The parties, the majority opinion, the court of appeals, the circuit court, Justice Prosser's dissent, and I agree that the test set forth in Williams is the correct test to apply in the present case. According to the Williams test, prosecutors must balance two duties: (1) the duty to present all relevant information to the sentencing court; and (2) the duty to honor the plea agreement. "A prosecutor may convey information to the sentencing court that is both favorable and unfavorable to an accused, so long as the State abides by the plea agreement." Williams, 249 Wis. 2d 492, ¶44.

¶86 I agree with the State's assessment that the petition for review in the present case should not have been granted to decide the sole issue of the propriety of the prosecutor's

---

[3] State v. Sprang, 2004 WI App 121, ¶29, 274 Wis. 2d 784, 683 N.W.2d 522.

remarks. I would therefore dismiss the petition as improvidently granted.

II

¶87 Because the court is unwilling to dismiss the matter, I write to agree with the decision of the court of appeals that the prosecutor's sentencing remarks materially and substantially breached the plea agreement.[4] A prosecutor's "impl[ying] that [the defendant] should receive a harsher sentence" is a material and substantial breach of the plea agreement.[5]

¶88 I have examined all three of the prosecutor's comments at issue in the instant case and conclude, as did the court of appeals and Justice Prosser's dissent, that the prosecutor implied to the sentencing court that the defendant deserved a harsher sentence than that recommended in the plea agreement, thus materially and substantially breaching the plea agreement. Accordingly, I dissent.

¶89 The implications of the prosecutor's comments at sentencing are at issue here. The three comments made by the prosecutor at sentencing are as follows.

¶90 After the prosecutor recited the maximum penalties in the sentencing agreement, the prosecutor stated:

---

[4] State v. Bokenyi, No. 2012AP2557, unpublished slip op., ¶11 (Wis. Ct. App. June 18, 2013).

[5] State v. Liukonen, 2004 WI App 157, ¶17, 276 Wis. 2d 64, 686 N.W.2d 689.

The Williams test prevents commentary from "implicitly conveying the message that [the prosecutor] was questioning the wisdom of the plea agreement." State v. Williams, 2002 WI 1, ¶39, 249 Wis. 2d 492, 637 N.W.2d 733.

I think the felony classifications obviously indicate the extreme seriousness of these offenses that night. But to be honest, I don't think they really do them justice in terms of how serious this was.

¶91 The prosecutor read the victim's letter at sentencing and commented on the letter as follows:

[T]here's the need to protect the public or the public's interest in rehabilitation of the defendant and I think this overwhelmingly comes down the protection of the public interest. The protection of the public, being Sherry [sic] Bokenyi and their son. They have a right, as she says in her letter, to live fearlessly while their son is growing up and in school. She has a right to live not in fear that Mr. Bokenyi, when he gets out, is going to come looking for her and to finish what he's attempted at least one other time before.

¶92 The prosecutor editorialized on the "jail incident report" as follows:

What is again perhaps the most frightening for me is to read an incident report from the Polk County Jail . . . . [The defendant threatened] to "shoot up some cops" . . . and . . . anyone who got in his way . . . . There is an absolute necessity to protect the public from William Bokenyi.

¶93 The defendant argues that these comments insinuate that the plea agreement's recommended sentence would be insufficient. The majority opinion responds that the defendant's argument fails because the prosecutor has imparted relevant information for a court to consider. Majority op., ¶¶44, 51, 71. The majority opinion emphasizes relevance, not the prosecutor's duty to honor the plea agreement by effectively communicating that the prosecutor believed the plea agreement's recommended sentence was appropriate.[6]

---

[6] See Liukonen, 276 Wis. 2d 64, ¶16.

4

¶94 I appreciate that often there may be a "fine line" between conveying relevant information and breaching the plea agreement.[7] Nevertheless I conclude that in the instant case each comment separately and the three comments together implied that the prosecutor believed the defendant deserved a sentence harsher than the plea agreement's recommended sentence. Thus, the prosecutor materially and substantially breached the plea agreement.

¶95 I would add to the court of appeals decision and Justice Prosser's dissent the admonition that because "[t]he reality is that plea bargains have become . . . central to the administration of the criminal justice system . . . and ours 'is for the most part a system of pleas, not a system of trials,'"[8] prosecutors, defense counsel, and circuit courts must carefully and wholly fulfill their respective responsibilities in the plea agreement process.

¶96 For the reasons set forth, I dissent and would remand the cause for a new sentencing hearing.

¶97 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[7] See Williams, 249 Wis. 2d 492, ¶44.

[8] Missouri v. Frye, 132 S. Ct. 1399, 1407 (2012) (quoting Lafler v. Cooper, 132 S. Ct. 1376, 1388 (2012)).

¶98 DAVID T. PROSSER, J. *(dissenting).* The issue in this case is whether the prosecutor materially and substantially breached the plea agreement when he made statements that implied that the sentencing recommendation was too lenient. The majority concludes that the prosecutor did not undercut the plea agreement when he stated that the felony classifications of the crimes charged did not do the offenses justice, when he endorsed the victim's statement that arguably called for a longer term of confinement than the prosecutor agreed to recommend, and when he characterized Bokenyi's threats to shoot police officers as "the most frightening for me." Because I conclude that the prosecutor materially and substantially breached the plea agreement, and Bokenyi's counsel provided ineffective assistance in failing to object to the breach, I respectfully dissent.

### FACTUAL AND PROCEDURAL BACKGROUND

¶99 William Bokenyi (Bokenyi) was charged with ten offenses stemming from an incident in which he threatened to kill his wife and son while he was wielding two knives. Seven of the ten offenses were felonies. Fourteen months later, Bokenyi pled guilty to first-degree recklessly endangering safety, a Class F felony (Count 1),[1] intimidating a victim, a Class G felony (Count 3),[2] and failing to comply with an officer's attempt to take a person into custody, a Class I felony (Count 4).[3] All other offenses were dismissed but read in

---

[1] Wis. Stat. § 941.30(1).

[2] Wis. Stat. § 940.45(1).

[3] Wis. Stat. § 946.415(2).

1

for purposes of sentencing. Bokenyi also had a prior conviction for first-degree recklessly endangering safety as well as a non-violent federal felony.

¶100 Bokenyi's pleas were part of a plea bargain in which the State agreed that its sentencing recommendation "would be capped . . . at the high end range of the PSI [Pre-Sentence Investigation]."

¶101 Bokenyi committed his offenses on August 1, 2010. He entered his plea on September 30, 2011. Because Bokenyi was in custody from the date of his offenses, he was entitled to receive 14 months of credit on any sentence of confinement he received as of the date of his plea. Every day from the date of his plea through the date of his sentence added another day of sentence credit.

¶102 The parties and the court agreed upon a PSI. It arrived on December 5, 2011. Sentencing was then set for January 23, 2012. Consequently, Bokenyi was entitled to 540 days of credit against his sentence on the day he was sentenced.

¶103 It is impossible to know what the prosecutor anticipated in terms of a PSI sentencing recommendation. The maximum period of "imprisonment" for the three felonies that Bokenyi pled to was 26 years. Wis. Stat. § 939.50(3)(f)-(g), (i). This translates into a maximum period of confinement of 14 years. Wis. Stat. § 973.01(2)(b)6m.-7., 9.

¶104 The PSI recommended three to four years of initial confinement, plus many years of extended supervision. Four

2

years of confinement was less than one-third of the maximum confinement that the court could impose.

¶105 Under the plea bargain, the prosecutor was bound to recommend no more than four years of initial confinement. But if the court imposed four years of initial confinement (365 x 4 = 1460 days), the defendant would be released from confinement in 920 days (1460 - 540 = 920), a little more than two and a half years after he was sentenced.

¶106 There is no dispute that the prosecutor's explicit recommendation complied with the plea agreement; that is, he did not ask for more than four years of initial confinement.

¶107 The question is whether he breached the plea agreement by implying in his sentencing remarks that this four-year recommendation was too lenient——that the defendant should receive a longer sentence.

CONTROLLING PRINCIPLES OF LAW

¶108 The seminal case on a prosecutor's obligation to keep his part of a plea bargain is Santobello v. New York, 404 U.S. 257 (1971). "[P]lea bargaining," the Court said, "is an essential component of the administration of justice." Id. at 260. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262.

¶109 Santobello was not a unanimous opinion because the justices disagreed about the defendant's remedy for a prosecutor's breach. But all justices agreed that the breach of

3

a plea agreement requires a remedy. Justice Douglas observed that lower courts "have uniformly held that a prisoner is entitled to some form of relief when he shows that the prosecutor reneged on his sentencing agreement made in connection with a plea bargain." Id. at 266 (Douglas, J., concurring). Justice Marshall concluded that a defendant "must be permitted to withdraw his guilty plea," id. at 267 (Marshall, J., concurring in part, dissenting in part), when the prosecutor breaches the plea agreement.

¶110 This court has summed up the law: A defendant "has a constitutional right to the enforcement of a negotiated plea agreement." State v. Williams, 2002 WI 1, ¶37, 249 Wis. 2d 492, 637 N.W.2d 733 (footnote omitted). Inasmuch as this basic principle is beyond dispute, the question becomes whether a prosecutor's comments constitute a breach.

¶111 At sentencing, "[t]he State must balance its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement." Id., ¶44. A prosecutor may not undercut an express sentencing recommendation by insinuating that it is too lenient. See id., ¶42; State v. Ferguson, 166 Wis. 2d 317, 322, 479 N.W.2d 241 (Ct. App. 1991) (citation omitted) (stating that a prosecutor may not "convey a message to the trial court that a defendant's actions warrant a more severe sentence than that recommended"). Implying that a sentencing recommendation is insufficient is a material and substantial breach because it "defeats the benefit for which the accused bargained." Williams, 249 Wis. 2d 492, ¶38 (footnote omitted).

4

¶112 Thus, I agree completely with paragraph 43 of the majority opinion:

> It is certainly true that "'[e]nd runs' around a plea agreement are prohibited." Williams, 249 Wis. 2d 492, ¶42 (citing State v. Hanson, 2000 WI App 10, ¶24, 232 Wis. 2d 291, 606 N.W.2d 278). "The State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." Id. (quoting Hanson, 232 Wis. 2d 291, ¶24; citing Ferguson, 166 Wis. 2d at 322).

¶113 A defendant is not entitled to relief from a prosecutor's comments or conduct at sentencing unless a breach of the plea agreement is material and substantial. Williams, 249 Wis. 2d 492, ¶38. "[W]hether the State's conduct constitutes a breach of a plea agreement and whether the breach is material and substantial are questions of law." Id., ¶2.

¶114 When a prosecutor violates the principles discussed above in paragraph 112, that violation constitutes a material and substantial breach of the plea agreement.

THE SENTENCING HEARING

¶115 I turn now to the sentencing hearing. When the court reviews a sentencing transcript to determine whether there was a material and substantial breach of the plea agreement, it examines the whole proceeding. Id., ¶46. The court closely examines the sentencing transcript to determine whether the prosecutor was faithful to the bargain.

¶116 Circuit Judge Molly E. GaleWyrick began the sentencing hearing by listing Bokenyi's convictions and the dismissed charges:

5

Mr. Bokenyi was convicted on September 30, 2011 of Count 1, first degree reckless endangering safety. That is a Class F felony. It's punishable by 12 years and 6 months in prison, divided 7.5 in and 5 out. Count 3 is intimidate a victim, use or attempted force. This is a Class G felony. It is punishable by imprisonment not to exceed 10 years. It's 5 in and 5 out. And Count 4 failure to comply with an officer. That's a Class I felony, punishable by 3.5 years in prison. 1.5 in and 2 out. There were additional counts which were read-in for purposes of sentencing. Count 2 is another count of intimidate a victim, use or attempt of force. Counts 5 through 7, battery to law enforcement officer/firefighter. Count 8, disorderly conduct. Count 9 resisting or obstructing. Count 10 endangers safety with a dangerous weapon.

Shortly after the judge read the charges, the prosecutor read a letter from Sherri Bokenyi (Sherri), the defendant's wife and the principal victim of his crimes:

To Judge GaleWyrick, to whom it may concern. It has been a long wait for this day, yet I'm still nervous and scared. I want Bill to serve time due to him that justifies his behavior. But also I want him to get help while he is in prison. Myself and our son [MB], are afraid for the day Bill will get let out because we are unsure of what he would be capable of doing. I prefer that we could live fearlessly while our son MB only 11 is growing and in school. Thank you. [Sherri] Bokenyi.

¶117 The prosecutor then described the offense. He described how Bokenyi had two knives in his hands when officers arrived and how he slammed the door when the officers told him to drop the knives and get on the floor. The prosecutor described how the officers heard Bokenyi yell that he was going to kill his wife and how the officers had to shoot Bokenyi because he would not comply with their orders to drop the knives. The prosecutor recounted Sherri's testimony about how Bokenyi asked repeatedly whether Sherri or their son should die

6

first.  He then described how Bokenyi's son dialed 911, and he commented that the child would have to live with the memory of that event for the rest of his life.

¶118 All this was permissible.  The prosecutor needed to support his recommendations by establishing the gravity of the offenses.  The description of the incident demonstrated the severity of the crimes for which Bokenyi was being sentenced. Had the prosecutor stopped there, this would be an easy case. However, the prosecutor went on to make three errors. Especially when these errors are considered together——considered cumulatively——they constitute a material and substantial breach of the plea agreement.

COMMENTS ABOUT THE CRIMES' SEVERITY

¶119 The prosecutor's first breach of the plea agreement occurred when he described the severity of the crimes as follows:

> The three convictions that [Bokenyi] is being sentenced on today is a first degree reckless endangerment, a 12 and a half year felony, and intimidation of a victim, a 10 year felony and failure to comply with a law enforcement officer, a 3 and a half year felony.  I think the felony classifications obviously indicate the extreme seriousness of these offenses that night.  But to be honest, I don't think they really do them justice in terms of how serious this was.
>
> This was a man who had history and I think it's backed up not only from the PSI but in what Mr. Smestad has provided.  A history of homicidal thoughts or ideations about killing his wife and killing his son.  And I believe, it's the state's contention that he was intent on carrying out that ideation that night and if not for law enforcement's interceding, it may well have been carried out.

7

So although these are three felonies and these are very serious crimes, I don't think to be honest with you that they even come close to telling what could have happened that night and what might have happened that night and just in and of itself the seriousness of what did happen that night. It's all exacerbated by this all happening in front of this couple's child. He was I believe 10 at the time when this happened. He's now 11.

¶120 These paragraphs are significant in several ways.

¶121 The prosecutor repeated the offenses and the penalties for the offenses, even though the court had gone over the same information moments earlier. He repeated the maximum period of "imprisonment." Then he said that "the felony classifications obviously indicate the extreme seriousness of these offenses." But, "I don't think they [e.g., the three felony convictions] really do . . . justice in terms of how serious this was."

¶122 After describing Bokenyi's homicidal thoughts about "killing his wife and son," the prosecutor again offered his opinion that "although these are three felonies and these are very serious crimes, I don't think . . . that they [e.g., the three felony convictions] even come close to telling what could have happened that night."

¶123 No doubt the prosecutor is permitted to point out the seriousness of crimes, and no doubt the prosecutor is entitled to focus the court's attention on the future. But is the prosecutor entitled to convey the view that the defendant's conduct was more grievous than what is reflected in the crimes to which the defendant pled guilty, especially when that view is connected with concern about the future?

8

¶124 Here, when the prosecutor listed the maximum terms of imprisonment and then immediately stated that the felony classifications do not sufficiently indicate the seriousness of the offenses, he implied that Bokenyi deserved longer sentences than the maximum sentences for the three counts to which he pled.

¶125 In State v. Liukonen, 2004 WI App 157, ¶¶15-17, 276 Wis. 2d 64, 686 N.W.2d 689, the court of appeals determined that a prosecutor materially and substantially breached a plea agreement when he suggested that the defendant deserved a more stringent sentence than the plea agreement provided. In Liukonen, the prosecutor stated that "even if the Court goes along with the proposed sentence recommendation, I think [the defendant] will be getting a tremendous break from the system, but it has been agreed to . . . ." Id., ¶15. Similarly, in the present case, the prosecutor implied that he thought the plea agreement was too lenient by suggesting that the felony classifications of the charges do not do justice to Bokenyi's offenses.

¶126 Unlike the majority, I do not believe the prosecutor was merely communicating the State's position about the serious nature of the offenses. See majority op., ¶55. Nor do I agree with the majority's discussion of the circuit court's observations about the prosecutor's comments. See majority op., ¶56. The circuit court said, "[The prosecutor is] not talking about the 26 years not doing justice to the crimes. He's talking about . . . the A through I classification system not

9

doing justice to how serious the conduct was in this particular case." What is the difference? The classification system deals with a range of penalties, and the prosecutor indicated in some manner that the system's penalty structure was "not doing justice to how serious the conduct was in this particular case." If the system's classification structure is not adequate, how can a sentence of confinement of less than a third of the maximum authorized by the system be adequate?

¶127 Although prosecutors must walk a fine line as they make arguments at sentencing, Williams, 249 Wis. 2d 492, ¶44, the line here is clear: a prosecutor may not suggest that the defendant's conduct was in some way more serious than the charges to which he pled. Such a suggestion implies that the plea agreement is insufficient——a suggestion that constitutes a material and substantial breach.

THE COMMENTARY ON THE VICTIM'S LETTER

¶128 The prosecutor breached the plea agreement by endorsing the victim's statement that he had read earlier in the hearing:

> Finally, there's the need to protect the public or the public's interest in rehabilitation of the defendant and I think this overwhelmingly comes down to the protection of the public interest. The protection of the public, being [Sherri] Bokenyi and their son. They have a right, as she says in her letter, to live fearlessly while their son is growing up and in school. She has a right to live not in fear that Mr. Bokenyi, when he gets out, is going to come looking for her and to finish what he's attempted at least one other time before.

(Emphasis added.)

10

¶129 In her letter, Sherri mentioned that her son was 11 years old. The prosecutor repeated the child's age in the previously quoted passages. The idea that Sherri has a right to live without fear while her son is in school suggests that she has a right to live without fear until her son turns 18——the age at which students traditionally finish high school. Thus, by agreeing with Sherri, the prosecutor suggested that Bokenyi should be confined for roughly seven years, a suggestion that undermines the recommendation of four years of initial confinement.

¶130 It must be remembered, once again, that if the defendant received only four years of initial confinement, he would be scheduled for release in a little more than two and a half years. I am unable to agree with the majority that the prosecutor's recommendation of four years confinement was "seemingly consistent with the victim's wishes," majority op., ¶68, inasmuch as the victim specifically asked to "live fearlessly while our son M.B.[,] only 11[,] is growing and in school."

¶131 The victim expressed fear in her letter "for the day Bill will get let out."

¶132 Thus, when the prosecutor said, "They have a right, as she says in her letter, to live fearlessly while their son is growing up and in school," he was impliedly asking for more than

11

two and a half years of additional confinement.[4] When the prosecutor referred to "when he gets out," he was not expressing his confidence in extended supervision.

¶133 The majority dismisses the implication and effect of the prosecutor's statements by emphasizing victims' rights.

¶134 While victims' rights are unassailably important, they do not eclipse the rights of defendants. The Wisconsin Constitution protects victims' rights, but it also explicitly states, "Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law." Wis. Const. art. I, § 9m. Thus, Santobello and its progeny continue to require prosecutors to fulfill promises made pursuant to plea agreements. See Santobello, 404 U.S. at 262. In fact, the advent of victims' rights laws infuses plea bargains and prosecutor conduct at sentencing with greater importance because a victim's statement or recommendation might conflict with the plea agreement. Thus, the prosecutor must take care to avoid endorsing a victim's statement that is inconsistent with a plea agreement. In addition, it may be prudent for someone other than the prosecutor to read a victim's statement, especially in cases

---

[4] The majority agrees with the circuit court's determination that the prosecutor was permitted to reference the victim's statement without augmenting it. Majority op., ¶67. However, the prosecutor did not merely reference the statement; he agreed with it. Even absent augmentation, it is impermissible for a prosecutor to agree with a victim's statement that contradicts a plea agreement.

12

where the victim explicitly or implicitly makes statements contrary to the plea agreement.[5]

INCIDENT AT POLK COUNTY JAIL

¶135 The prosecutor's final error arose when he discussed an incident that occurred seven months before Bokenyi entered his plea and almost one year before the sentencing hearing. The prosecutor stated:

> What is again perhaps the most frightening for me is to read an incident report from the Polk County Jail on February 11th of 2011. A jailer . . . indicates that on the above date I was doing med pass on the maximum part of the jail. Inmate Bokenyi came out for the evening meds and I asked him how he was doing. He stated okay, but he was still here and that he could not wait for the time that he was out of here so he could quote "shoot up some cops" end quote. I asked him why he would do that. He said they all deserved it. And making conversations with him I stated that wouldn't he rather just get out and enjoy being out then [sic] risk coming back in. He stated that next time he would not be coming back, and he would also shoot anyone who got in his way while he was shooting at the cops. There is an absolute necessity to protect the public from William Bokenyi.

(Emphasis added.)

---

[5] Although the circuit court concluded that it was not a material and substantial breach for the prosecutor to read the victim's statement, the court did note:

> Now in hindsight it would have been more appropriate for us to have brought the victim witness coordinator into court to read this statement or someone else other than the prosecutor. I'll take responsibility for that. I should have seen the potential for that being misunderstood or mischaracterized, and should have asked that some other person read it.

13

¶136 Reference to the jail incident came not long after the prosecutor said that Bokenyi had a history "of homicidal thoughts or ideations about killing his wife and killing his son." Then he added:

> [M]any of his issues with his mental health . . . arise out of suicidal and homicidal ideations, both in regard to his wife and in regard to his son. He talks about having visions of slitting their throats . . . . [Mrs. Bokenyi] has a right to live not in fear that Mr. Bokenyi, <u>when he gets out</u>, is going to come looking for her and to finish what he's attempted at least one other time before.

¶137 The jail incident broadened the defendant's threats from his family to the police, and it enhanced a recurrent theme in the PSI.

¶138 Immediately after reference to the jail incident, the prosecutor made his recommendation:

> On Count 1 the state requests a sentence of 8 years. 4 of initial confinement and 4 of extended supervision.
>
> On Count 3 state's requesting withheld sentence and for 5 years probation consecutive to Count 1.
>
> And on Count 4 the state is requesting for a withheld sentence, he be placed on probation for 3 years, consecutive to Count 1, concurrent with Count 3, with all the conditions laid out on page 3 of the PSI.

¶139 There is an unsettling incongruity between the prosecutor's statements about multiple frightening incidents and the need to protect the public, on the one hand, and the recommendation of only four years of initial confinement, on the other. The discussion of the jail incident came after a description of the heinous crime, after a discussion of a past

14

incident in which Bokenyi threatened his wife and police with a firearm in Ashland, and after a description of Bokenyi's homicidal thoughts and mental issues.

¶140 Thus, the prosecutor's sentencing recommendation did not come with a bang, with a crescendo; it came with a whimper.

¶141 It is true that a prosecutor must demonstrate why probation is not appropriate and why a period of confinement is justified.  See State v. Gallion, 2004 WI 42, ¶44, 270 Wis. 2d 535, 678 N.W.2d 197 (citations omitted) (internal quotation marks omitted) (stating that the court should impose "the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant" and "should consider probation as the first alternative").  However, in the present case, there were more than enough negative facts to support the recommended sentence without the prosecutor characterizing the jail incident as "the most frightening."  It was not necessarily improper for the prosecutor to mention the jail incident, but in the context in which this argument appears——right before the recommendation of four years of initial confinement——it undercuts the prosecutor's recommendation.

¶142 The majority quotes Grant v. State, 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976), for the proposition that it is against public policy for prosecutors to agree not to discuss information relevant to sentencing.  Majority op., ¶72. However, there is no allegation or suggestion that the defendant

asked the prosecutor to refrain from bringing relevant information to the court's attention in this case. Instead, the defendant argues that the prosecutor's characterization of the jail incident as "the most frightening for me" breached the plea agreement. I agree.

¶143 As a practical matter, if the prosecutor had known about the jail incident at the time of plea negotiations, he probably should have included in the plea agreement the fact that he planned to mention the incident at sentencing.

¶144 After the parties concluded their arguments at the sentencing hearing, the circuit court said, "I agree with the state that this is a very serious crime. It's a Class F felony but that doesn't do it justice." (Emphasis added.) On Count 1, the court sentenced Bokenyi to seven years and five months[6] of initial confinement and five years of extended supervision concurrent with Counts 3 and 4. On Count 3, the court sentenced Bokenyi to five years of initial confinement and five years of extended supervision concurrent with Counts 1 and 4. On count 4, Bokenyi received a sentence of one year of extended supervision concurrent with Counts 1 and 3.

¶145 Whether the court was influenced by the prosecutor's breach is not relevant to this analysis; it is important only that the prosecutor materially and substantially breached the plea agreement. Given that there was a breach, I turn to whether Bokenyi's counsel was ineffective for failing to object.

---

[6] The court later amended the judgment of conviction to sentence Bokenyi to seven years and six months of initial confinement and five years of extended supervision.

16

INEFFECTIVE ASSISTANCE OF COUNSEL

¶146 Ordinarily, to prove that counsel was ineffective, a defendant must demonstrate: (1) that his attorney rendered deficient performance; and (2) that counsel's deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). Although a defendant must normally prove prejudice to prevail on a claim of ineffective assistance of counsel, when a prosecutor materially and substantially breaches a plea agreement, the court presumes prejudice. State v. Smith, 207 Wis. 2d 258, 281-82, 558 N.W.2d 379 (1997). Consequently, Bokenyi needed to prove only that his counsel was deficient to prevail in this case. To prove deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.

¶147 At the hearing on Bokenyi's postconviction motion, the attorney who represented Bokenyi at sentencing testified that he did not believe the prosecutor breached the plea agreement. When an attorney fails to notice that the prosecutor has materially and substantially breached the plea agreement, his conduct falls below what is objectively reasonable. Therefore, I conclude that Bokenyi's counsel provided ineffective assistance and would remand the case for resentencing.

CONCLUSION

¶148 The prosecutor made a very effective, very powerful argument. In most circumstances, his argument would have been welcome and entirely appropriate. In this case, however, the

17

prosecutor entered into an ill-advised plea bargain in which he ceded his sentencing recommendation prerogatives to the writer of the PSI. When the writer recommended a relatively light sentence, the prosecutor faced a serious dilemma. The reality of his dilemma cannot be ignored.

¶149 Nonetheless, plea agreements are not to be taken lightly. When the State agreed to limit its sentencing recommendation to the upper range from the PSI in exchange for Bokenyi's guilty pleas, it was required to uphold its end of the bargain. The State's implicit suggestions that the sentencing recommendation was too lenient constituted a material and substantial breach of the plea agreement, and Bokenyi's counsel was ineffective for failing to object to it.

¶150 I take no pleasure in this dissent because in many ways I identify with the prosecutor. The problem is that if the prosecutor's comments here are approved as being consistent with the obligations of the plea agreement, future defendants will not be able to rely on the benefits they bargained for.

¶151 The integrity of the criminal justice system must be preserved.

¶152 For the foregoing reasons, I respectfully dissent.

¶153 I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.

18