**STATE of Iowa, Appellee,**

v.

**Darwin Ray KUCHENREUTHER,**
**Appellant.**

**No. 56615.**

Supreme Court of Iowa.

May 22, 1974.

Shaw, Shaw & Beneke, Pocahontas, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Ike Skinner and Raymond W. Sullins, Asst. Attys. Gen., and Charles A. Gunderson, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

RAWLINGS, Justice.

Defendant, Darwin Ray Kuchenreuther, appeals from judgment on jury verdict finding him guilty of larceny in the nighttime. We reverse.

Reduced to bare essentials this case emanates from a prosecution initiated by county attorney's information filed after some instantly irrelevant procedural skirmishing.

After having participated in a December 20, 1971 nighttime theft of money from a service station in Pocahontas, defendant informed his attorney regarding the transgression. The latter, in turn, contacted the Pocahontas County Attorney. Following an apparent good faith negotiation this agreement was executed:

"This grant of immunity made by Charles A. Gunderson, County Attorney for Pocahontas County Iowa, is made to Darwin Ray Kuchenreuther and is a promise against prosecution for any and all possible crimes committed by Darwin Ray Kuchenreuther at any time up to and including the 10th day of January, 1972.

"In consideration of the Grant of Immunity by the said Charles A. Gunderson, the said Darwin Ray Kuchenreuther agrees to not invoke his Fifth Amendment privilege against self incrimination in proceedings in which he has knowledge of crimes committed or to be committed but no information so gained, at this or any time shall ever be used to prosecute Darwin Ray Kuchenreuther. It is further agreed that no evidence adduced at any time by the testimony of the said Darwin Ray Kuchenreuther will be used to prosecute for any unrelated criminal activities of any nature nor will the evidence adduced be used by the authorities to trace and survey further activities of the said Darwin Ray Kuchenreuther nor will he be subject to any further investigation based on this testimony.

"In consideration of this Grant of Immunity Darwin Ray Kuchenreuther agrees to cooperate with the County Attorney Charles A. Gunderson and provide information on any and all criminal activities of any nature of which he has knowledge and to cooperate with the said Charles A. Gunderson by testifying under oath to these facts if subpoenaed into court of law. He further agrees that he will plead guilty to Disturbing the Peace pursuant to the Municipal Code of the City of Pocahontas, Chapter 32, Section 32.1(1) *Disturbing the Peace* and make full restitution for any cash taken on the evening of December 20, 1971, that sum being the amount of $100.00.

"It is further agreed by and between the parties that all information given by Darwin Ray Kuchenreuther will be kept in the strictest confidence by the County Attorney except in the event it must be used to prosecute others than Darwin Ray Kuchenreuther. The County Attorney agrees that other than charging the said Darwin Ray Kuchenreuther for disturbing the peace he will at no time file a County Attorney's Information nor prosecute on any preliminary information nor present information to a grand jury nor will he allow any other means of whatever nature to be used to prosecute Darwin Ray Kuchenreuther for any crimes of whatever nature committed up to and including the 10th day of January 1972. And he represents that the State of Iowa will also never prosecute Darwin Ray Kuchenreuther for any crime other than disturbing the peace aforementioned. Darwin Ray Kuchenreuther has already supplied information to the County Attorney regarding crimes committed on the 10th day of January and will truthfully give information on any other crimes of which he has knowledge, however the truth of these matters testified to by Darwin Ray Kuchenreuther can never be used as a means of avoiding this granting of immunity. This agreement and grant of immunity provides in substance for complete and total immunity to Darwin Ray Kuchenreuther, provides that he will only be charged with disturbing the peace as aforementioned and will make restitution in the amount of $100.00 and will provide other information that he has to the County Attorney. The County Attorney agrees to all the aforementioned and agrees to keep all information received

as confidential as is possible and will divulge the source of the information only if necessary to prosecute other persons other than Darwin Ray Kuchenreuther and will then require Darwin Ray Kuchenreuther's testimony only after subpoenaed into court of law. This agreement and grant of immunity is signed by the following: January 10, 1972

> "/s/ Charles A. Gunderson
> County Attorney Poca. Co. Ia.
> Darwin Ray Kuchenreuther
> William A. Shaw, Attorney for
> Darwin Ray Kuchenreuther"

Pursuant to said agreement Kuchenreuther effected restitution of the money taken December 20, 1971, and cooperated with the county attorney as agreed but was never afforded opportunity to plead on a disturbing the peace charge. Rather, as aforesaid, Kuchenreuther was charged by information with larceny in the nighttime.

Defendant's challenge thereto was dealt with by trial court as a motion to dismiss said information. To this motion the State, represented then by Charles A. Gunderson, the Pocahontas County Attorney, and Ike Skinner, an Assistant Attorney General and Special Prosecutor, filed resistance. After hearing arguments by counsel trial court held adverse to defendant movant.

Subsequently the State moved for an order in limine to preclude defendant's attorney from mentioning or eliciting any information, during trial and in presence of the jury, as to the agreement set forth above. That motion was sustained.

Thereafter the case came on for hearing and, as previously noted, a guilty verdict ensued.

In support of a reversal Kuchenreuther contends trial court erred in holding the above quoted agreement was of no legal force or effect.

■ I. Defendant inceptionally urges breach of said agreement by the State con-stitutes a denial of due process. In taking that position he leans heavily on Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

Since no such constitutional claim was voiced in trial court it will not be entertained on this review. See State v. Cooper, 217 N.W.2d 589 (Iowa, opinion filed April 24, 1974); State v. Martin, 212 N.W.2d 504, 505 (Iowa 1973).

■ II. It is also understood, subject to certain specific statutorily provided exceptions, a bare promise of immunity from prosecution has no standing in this jurisdiction. See State v. O'Kelly, 211 N.W.2d 589, 595–596 (Iowa 1973). See generally Annot. 43 A.L.R.3d 281.

■ III. It still remains, however, the foregoing is not dispositive of the question now before us.

At the outset we are persuaded the prosecution and conviction of this defendant on a felony charge, if allowed to stand, would unduly undermine our system of justice. See e. g., United States v. Carter, 454 F.2d 426, 427–428 (4th Cir. 1972); United States v. Paiva, 294 F.Supp. 742, 744–748 (D.D.C.1969); cf. Dixon v. District of Columbia, 129 U.S.App.D.C. 341, 394 F.2d 966, 970 (1968); United States v. German, 355 F.Supp. 679, 683 (D.P.R.1972).

In United States v. Carter, cited above, the court dealt with a problem akin to that here presented, and appropriately observed, 454 F.2d 427–428:

> "[W]e conclude that if the promise was made to defendant as alleged and defendant relied upon it in incriminating himself and others, the government should be held to abide by its terms. United States v. Paiva, 294 F.Supp. 742 (D.D.C.1969) so holds: 'if, after having utilized its discretion to strike bargains with potential defendants, the Government seeks to avoid those arrangements by using the courts, its decision so to do will come under scrutiny. If it further

appears that the defendant, to his prejudice, performed his part of the agreement while the Government did not, the indictment may be dismissed.' 294 F. Supp. at 747."

The court also aptly declared, 454 F.2d at 428:

"There is more at stake than just the liberty of this defendant. At stake is the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government."

Briefly stated, we cannot place our stamp of approval upon the overreaching tactics which were here employed by the prosecution.

IV. Moreover, it is to us evident State v. O'Kelly, *supra,* is so factually distinguishable as to be instantly nonpersuasive.

As noted in *O'Kelly,* 211 N.W.2d at 595, plea bargaining—a promise by a prosecutor in exchange for a guilty plea to some charge—was not there involved. In the case at bar, however, the county attorney unequivocally agreed that in exchange for given cooperation by Kuchenreuther his guilty plea to a specified lesser offense would be accepted and stand as a complete bar to any felony charge or prosecution. This takes on most if not all the colorations of a plea bargain agreement. See ABA Standards Relating to Pleas of Guilty, § 3.1 and Commentary at 60–69 (Approved Draft 1968).

Also touching on the subject at hand is Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In that case a New York prosecutor promised an accused, in exchange for a guilty plea, no recommendation as to sentence would be made. Such plea was thereafter entered by accused but a different prosecutor appeared and effectively recommended the maximum sentence be imposed. On certiorari review the sentence was vacated and the case remanded to state court for a determination as to whether (1) specific performance should be granted, or (2) defendant should be allowed to withdraw his plea.

Significantly the court said in *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

It is also worthy of note that *Santobello* was not adjudicated on any constitutional ground but rather by application of what may be termed a "fair-play standard". See 11 Am.Crim.L.Rev. 771, 790 (1973).

V. Apparently the county attorney entered into the instantly involved plea bargain and attendant agreement in all good faith but for some reason changed his mind while en route to the court house. In any event the bargain made was breached by the State. Under existing circumstances such is nothing less than an intolerable violation of our time-honored fair play norm, and accepted professional standards.

This case must therefore be reversed and remanded with instructions that the judgment from which appeal is here taken be vacated, the case dismissed and costs taxed to the State.

Reversed and remanded with instructions.