# IN THE SUPREME COURT OF IOWA

No. 20–0156

Submitted December 15, 2021—Filed March 18, 2022

**STATE OF IOWA,**

Appellee,

vs.

**SHANE MICHAEL DAVIS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Floyd County, Christopher C. Foy (plea) and DeDra L. Schroeder (sentencing), Judges.

Defendant appealing sentencing errors after his guilty plea seeks further review of court of appeals decision dismissing his appeal for lack of subject matter jurisdiction. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT OF CONVICTION AFFIRMED, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING.**

Waterman, J., delivered the opinion of the court, in which Appel, Mansfield, McDonald, and McDermott, JJ., joined. Christensen, C.J., filed an opinion concurring in part and dissenting in part, in which Oxley, J., joined.

Thomas M. McIntee, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

Should direct appeals from convictions based on guilty pleas be summarily dismissed when the defendant's appellate brief fails to expressly argue good cause exists to appeal under Iowa Code section 814.6(1)(*a*)(3)? The court of appeals dismissed this appeal because the defendant bears the burden of establishing good cause and failed to address that requirement. Yet the defendant's brief made clear he was appealing sentencing errors, including the prosecutor's alleged breach of a plea agreement. Our precedents hold such appeals satisfy the statutory good-cause requirement. So we granted the defendant's application for further review.

On our review, we conclude the defendant's lamentable failure to discuss the good-cause requirement by name in his appellate brief does not mandate dismissal. We vacate the court of appeals dismissal order, reinstate the appeal, and decide it on the merits. For the reasons explained below, we hold the prosecutor breached the plea agreement obligating her support for a suspended sentence. The State does not contend otherwise. This error requires resentencing by a different judge.

Contrary to the view of our dissenting colleagues, this is not a case about victims' rights. And contrary to their dissent, we do not hold "the prosecutor breached the plea agreement by reading victim-impact statements at sentencing." This is a case about the prosecutor's duty to *recommend* a sentence pursuant to a plea agreement. Our obligation as a court is to uphold and enforce the parties' plea agreement. The prosecutor breached the plea agreement by

failing to recommend a suspended sentence in the manner required by our precedent.

## I. Background Facts and Proceedings.

Shane Michael Davis pleaded guilty to lascivious acts with a child and indecent contact with a child. According to the minutes of testimony, in the summer of 2019, Shane Michael Davis shared a home in Charles City with his fiancée, the victims' aunt. The parents viewed Davis as a family friend and allowed their daughters, then ages ten and eleven, to visit their aunt's home. The ten-year-old girl reported that while she was sitting on a couch there, Davis "rubbed her privates with his hand" over her clothes and warned her not to tell anyone "or he would beat and spank her." The eleven-year-old girl reported she was in the living room when Davis "grabbed" and "squeezed" her breasts and warned her not to tell anyone "or she could not see her aunt anymore." The girls told their parents who called the police. The police promptly investigated.

On November 4, 2019, Davis was charged by trial information in count I with lascivious acts with a child, a class "C" felony, in violation of Iowa Code sections 709.1, 709.8(1)(*a*), 709.8(2)(*a*), and 903B.1 (2019), and in count II with indecent contact with a child, an aggravated misdemeanor, in violation of sections 709.12(1)(*b*) and 903B.2. On November 25, following successful plea negotiations, Davis filed a written *Alford* guilty plea to a lesser included charge of lascivious acts with a child, a class "D" felony, in violation of section 709.8(1)(*e*), and entered an *Alford* guilty plea to count II as charged. The State agreed to follow the sentencing recommendations in the presentence

investigation (PSI) report, and Davis pleaded guilty "in exchange for the State's recommendation."

Davis, in his written guilty plea, acknowledged he understood the district court was not bound by the parties' agreed sentencing recommendation and that he understood "that the sentence I receive is solely a matter within the discretion of the judge." Following a plea hearing, the court accepted the guilty pleas, ordered a PSI report, and scheduled a sentencing hearing. Davis did not file a motion in arrest of judgment.

On January 15, 2020, the department of correctional services filed a PSI report that, based on Davis's "lack of criminal history and attachments to the community," recommended suspended prison sentences, supervised probation for five years, and placement at "the Beje Clark Center for 180 days or until maximum benefits have been received." The PSI report also recommended no-contact orders, use of an electronic monitoring tracking device, placement on the sex offender registry, a $250 civil penalty per section 692A.110(2), a $100 surcharge for each charge per section 911.2B, DNA sampling, and a ten year special sentence. Four victim-impact statements were attached to the PSI report.

On January 21, Davis appeared for sentencing. The district court asked Davis's counsel if he had enough time to go through the PSI report with Davis. His counsel responded in the affirmative. The district court then asked Davis's counsel if he had "any changes, objections, or corrections" to the PSI report, and his counsel denied having any corrections and agreed the court could rely on the PSI report for purposes of sentencing.

The district court next asked whether the State would be providing victim-impact statements. The prosecutor said she will read four statements, one from each child and parent. The record does not show that the prosecutor was designated as a victim's representative under section 915.21(1)(*a*). Nor does the record show the victims asked the prosecutor to read the statements in open court. Davis's trial counsel stated, "I have no objection. They are already attached to the presentence investigation report, I believe." The court told the prosecutor to "go ahead" and then the prosecutor read the four handwritten statements aloud in their entirety, beginning with the older daughter's statement:

> [This] ruined everything with family, and I am being called a liar. I don't understand why he did what he did. All I know is I feel dirty and scared, confused and stressed.
>
> Since this happened I have to do therapy and others at home. My grades have been slipping in school. I can't concentrate or sleep at night. I keep asking myself why do I have to live in misery, hurt and fear the rest of my life. . . .
>
> I want the Defendant locked away so he can't hurt me or my family anymore, so that I don't have to fear my life or being hurt again. I don't want him near me for the rest of my life. He is a bad man and a mean man.

The younger daughter's statement also asked the court to sentence Davis to prison. Her statement shared:

> I was a good kid, fun, loved to play, but now I have bad dreams and nightmares of this person hurting me. I am always scared he hurt me when he touched my private area. When I said no, he kept doing it. Then he told me he would hurt me if I told my mom and dad or anyone else and said I would never see my Aunt . . . again. Now I have to retake these med -- now I have to take these medicines for nightmares and anxiety and see therapist. Why he hurt me I don't know. But he's a bad man and need to be in jail so he can't hurt me again and I can feel safe again.

The prosecutor then read the parents' statements, which both asked for Davis to be sentenced to the maximum prison time. The father's statement elaborated:

> This has caused us all the burden of changing how we have lived before all this. The therapy appointments, the constant workers in and out of our home, our privacy ruined, the loss of kids' school for appointments, the financial with gas to all the appointments and constant driving to other towns to go eat or shop, loss of wages for appointments.

> How about the lifetime of my girls never trusting men or law enforcement if the Defendant is set free, the mental scarring they have endured, the horror and fear they live with and my wife and I as well.

> I would ask the Court to give Defendant maximum time incarcerated in prison and make it so that he does sex offender treatment, anger management, and mental evaluation. I ask the Defendant not to be allowed to be free to walk streets. I ask this so that myself and my children don't have to fear our safety or him possibly trying to harm any of us again or in other ways and to give my children time to heal from this and so that we don't have to pack up and leave our home nor children's school and friends to feel safe and not have to live in fear, Your Honor.

> In my opinion, the Defendant has no remorse for his actions of what has occurred or the fear and harm he has inflicted. Setting him free isn't fair as my girls and family have to endure his actions for a lifetime. And why would it be fair for the Defendant to receive probation and walk free when these children have to live in fear and constant stress for a lifetime and have to feel confined 'cause they have to fear the threats he made and the loss of trust in the law enforcement and judicial system if he is allowed to be free.

> . . . .

> If he is allowed probation by courts, then I feel and my children will feel that the judicial system is punishing them and my wife and I as we all have to live with the mental, emotional and financial burden and lack of safety for a lifetime while he gets a slap on hand and has the chance to live up to his threats of harm to my children and getting even with them, and courts sending a message to my children and other children that people like the Defendant can

get away with abusing them and that what police and courts say about serving and protecting children or people is a myth and that it's okay for people to be hurt by humans like the Defendant and that the victims are the ones who should pay and the perpetrators set free for their crimes and the harm they have caused.

The Mother's statement in turn revealed:

[My younger daughter] wakes up at night from nightmares, screaming, Don't touch me and Get away from me, or seeing the Defendant hurting her. Since this she is on medication for nightmares and has added medication for anxiety and depression this has caused her. She can't focus. She acts out at times.

[My older daughter] is now reserved instead of being outgoing -- her outgoing self that she was before this happened.

My husband and I can't sleep at night as we are always feeling like we have to keep looking over our shoulders or close eye on kids due to threats made by the Defendant, especially the threat of making our lives and our kids' lives a living hell, and that he knows people who will deal with us if he is convicted. We don't know what or if he will do anything, but the threats like he has made make us on edge.

This whole situation has been incredibly stressful on the girls and us as well as other family members. I myself have had three medications added during this time to help with depression, anxiety attacks, and panic attacks as it's so hard to sit back and watch my girls go through this and my husband and myself.

. . . .

I would like to see the Defendant sentenced to the maximum amount of time in prison. I would also like to see the Defendant sentenced to include the No Contact Order. Also for him to get the help he needs after he has a mental health evaluation.

I also want to make it known that if the Defendant does not get sentenced to prison and only gets sentenced to probation, then not only will [my daughters] have a harder time healing from this, they will also feel like the courts aren't protecting them and serving them like they say they do. The girls won't feel safe. Most of all, the girls will feel like it was pointless to tell Mommy, Daddy, Grandma, Grandpa, cops, DHS, and CPC, and that the cops, DHS, CPC, county attorney and the Judge all think they are lying because that kind of sentence wouldn't be punishment in their eyes because he would be

out on the streets. If he gets sentenced to only probation, you're showing my girls and society that justice isn't always served properly or even at all for that matter.

The prosecutor spent about fifteen minutes reading these statements; Davis's counsel made no objection. When the district court next asked for the State's recommendation on sentencing, the prosecutor responded:

> Your Honor, in this case the plea agreement was that the State would follow the recommendation made by the presentence investigation, so the State would join in those recommendations being made.[1]

The prosecutor never specifically said the State recommended suspended sentences, and she made no further statement in support of that recommendation.

Davis's trial counsel never objected that the State breached the plea agreement. Instead, he advocated for suspended sentences with "two to five years of supervised probation" and "the standard conditions such as the sex offender treatment program, sex offender registry, and . . . the special sentence parole that would apply to those." Davis, through his counsel, adamantly denied threatening anyone. Davis declined the opportunity for allocution.

Before pronouncing sentence, the district court stated:

> The laws of Iowa require that a sentence be imposed that provides for your rehabilitation, protects the community, and deters others from committing this type of offense, and deters your future actions, unlawful actions.
>
> The Court looks at several different factors in determining what an appropriate sentence is. I look at your age. I look at your

---

[1]The State also asked for an extension of the no-contact order for each victim and extra time "to submit a final restitution amount." Davis did not resist the State's recommendation for an extension of the no-contact orders.

> employment circumstances, your family circumstances, your record, the nature of the offense, your attitude, which included some eye rolling, some huffing and some -- I guess I wouldn't call it appropriate courtroom behavior, but -- It also includes everything I've learned about you through the presentence investigation report.

The court, without mentioning the plea agreement or State's recommendation, sentenced Davis to an indeterminate term of five years of incarceration for lascivious acts with a child and two years for indecent contact with a child, to be served consecutively, for a combined seven-year prison sentence. Neither sentence was suspended. Davis filed his notice of appeal the same day.

On appeal, Davis, through new counsel, argued the sentencing court impermissibly relied on information in the victim-impact statements that was "not admitted by the defendant or proven by the State," and the prosecutor breached the plea agreement by not explicitly recommending a suspended sentence and by reading multiple victim-impact statements recommending the maximum sentences. Davis argues his plea counsel was ineffective for failing to object to the State's breach of the plea agreement and for pressuring him to plead guilty. His appellate brief neither mentioned Iowa Code section 814.6 nor argued good cause existed to appeal.

The State argued Davis failed to preserve error because he did not to object during the sentencing hearing, the district court did not rely on unproven allegations, and Iowa Code section 814.7 precludes a direct appeal of ineffective-assistance-of-counsel claims. The State did not argue that the appeal should be dismissed under section 814.6 for lack of good cause. Most importantly, the

State in this appeal makes no argument that the prosecutor honored the parties' plea agreement.

We transferred the appeal to the court of appeals, which dismissed the appeal because "Davis has not addressed good cause, although it is his burden to establish it" under section 814.6(1)(*a*)(3). Davis filed an application for further review arguing the sentencing errors established good cause to appeal. He narrowed his requested relief to resentencing. Davis does not seek further review of the ineffective-assistance-of-counsel claims that challenge his guilty plea and sentence. We granted his application to decide the jurisdictional issue and the State's alleged breach of the plea agreement.

## II. Standard of Review.

"Our review of a sentence imposed in a criminal case is for correction of errors at law." *State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020) (quoting *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)). "We will not reverse a sentence unless there is 'an abuse of discretion or some defect in the sentencing procedure.'" *Id.* (quoting *Formaro*, 638 N.W.2d at 724). "We review de novo claims of ineffective assistance of counsel arising from the failure to object to the alleged breach of a plea agreement." *State v. Lopez*, 872 N.W.2d 159, 168 (Iowa 2015).

## III. Analysis.

We first address whether the court of appeals correctly dismissed this appeal for lack of good cause under Iowa Code section 814.6(1)(*a*)(3). We reinstate the appeal because the sentencing errors raised by Davis constitute

good cause to appeal. We next reject the State's arguments that section 814.7 prohibits this direct appeal of Davis's claim the prosecutor breached the plea agreement and that Davis did not preserve error. On the merits, we conclude the State breached the plea agreement, requiring resentencing by a different judge.

**A. Good Cause to Appeal Under Iowa Code Section 814.6.** The district court entered judgment and sentenced Davis on January 21, 2020, after the omnibus crime bill went into effect on July 1, 2019. *See* 2019 Iowa Acts ch. 140, §§ 28–29 (codified at Iowa Code § 814.6(1)–(2) (2020)); *State v. Boldon*, 954 N.W.2d 62, 68 (Iowa 2021). Iowa Code section 814.6 as amended now limits appeals from convictions based on guilty pleas (apart from class "A" felonies) to those "where the defendant establishes good cause." *Boldon*, 954 N.W.2d at 66, 68 (quoting Iowa Code § 814.6(1)(*a*)(3)). Davis is appealing from his conviction on a class "D" felony and must establish good cause to appeal. *See id.* But his appellate brief never cited section 814.6, nor explained how he established good cause to appeal. That omission prompted the court of appeals to summarily dismiss his appeal. We reinstate the appeal.

Section 814.6(1)(*a*)(3) was enacted to "restrict direct appellate review of most guilty plea challenges." *See Damme*, 944 N.W.2d at 105. Davis is appealing errors in his sentencing, not his guilty plea. We have held "that good cause exists to appeal from a conviction following a guilty plea when the defendant challenges his or her sentence rather than the guilty plea." *Id.* We explained,

> A sentencing error invariably arises after the court has accepted the guilty plea. This timing provides a legally sufficient reason to appeal notwithstanding the guilty plea. We save for another day the

question of what constitutes good cause to appeal to challenge a guilty plea.

*Id.*; *see also Boldon*, 954 N.W.2d at 69 ("Because Boldon challenges the sentencing hearing and his sentence, we conclude he has established good cause to pursue this direct appeal as a matter of right."). Applying these precedents, we hold Davis met the good-cause requirement to proceed with his direct appeal challenging his sentence.

Davis should have discussed section 814.6(1)(*a*)(3) and cited *State v. Damme* in his appellate brief to show he met the good-cause requirement. Counsel's failure to cite authority permits an appellate court to deem the issue waived. Iowa R. App. P. 6.903(2)(*g*)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). We decided *State v. Boldon* after Davis filed his brief, but before the court of appeals dismissed his appeal. *Boldon* made crystal clear that Davis could directly appeal the State's alleged breach of the plea agreement. The court of appeals erred by dismissing his appeal for lack of jurisdiction.

**B. Error Preservation and Section 814.7.** Davis argues the State breached the plea agreement at the sentencing hearing and that his plea counsel was ineffective for failing to object to the breach at the sentencing hearing. The State declined to address the merits of this argument, and instead argues that Davis failed to preserve error for the prosecutor's alleged breach without an objection at the sentencing hearing and that section 814.7 bars his direct appeal of ineffective-assistance-of-counsel claims. Iowa Code section 814.7 provides:

An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

But we have held section 814.7 does not prohibit direct appeals of claims that a prosecutor breached a plea agreement at the sentencing hearing. *State v. Jordan*, 959 N.W.2d 395, 399 (Iowa 2021) (determining that breach of a plea agreement "was a claim of sentencing error that could be reviewed directly without being cast as an ineffective-assistance claim"). Not all "forms of sentencing error[s] require a timely objection or challenge to preserve an issue for appellate review." *Boldon*, 954 N.W.2d at 70. "A prosecutor's breach of the plea agreement at sentencing irreparably taints the sentencing proceeding and a claim of breach is reviewable on direct appeal even in the absence of contemporaneous objection." *Id.* at 71. We therefore proceed to the merits of Davis's appeal.[2]

**C. Breach of the Plea Agreement.** The plea agreement obligated the State to follow the sentencing recommendation in the PSI report.[3] The PSI report recommended suspended sentences. When the district court asked for the State's position at the sentencing hearing, the prosecutor said only this:

Your Honor, in this case the plea agreement was that the State would follow the recommendation made by the presentence

---

[2]Section 814.7 precludes relief on direct appeal for Davis's ineffective-assistance claim that his trial counsel pressured him into pleading guilty. That claim can only be pursued through postconviction proceedings.

[3]The record does not indicate whether the prosecutor consulted with the victims' parents before entering into the plea agreement.

investigation, so the State would join in those recommendations being made.

The prosecutor did not advocate for the court's acceptance of the recommendation. Davis faults the prosecutor for failing to say out loud that she recommended "suspended sentences" after spending fifteen minutes reading four victim-impact statements calling for prison sentences. Davis argues:

> The prosecutor's narration was a de facto argument for the victims' requests for maximum prison sentences, contrary to the parties' plea agreement. The prosecutor made virtually no effort to comply with the spirit and intent of the plea agreement and in essence sought to undermine it by interjecting articulation of unproven allegations, which affected the Court's disposition.

The State's brief did not respond to this argument on the merits and nowhere argued that the prosecutor complied with her obligation under the parties' plea agreement.

The district court did not impose suspended sentences and instead imposed consecutive prison sentences totaling seven years. We presume prejudice when the State breaches a plea agreement, notwithstanding the lack of a contemporaneous objection by defense counsel. *Lopez,* 872 N.W.2d at 170 ("We decline to play mind reader to speculate on what the sentencing court would have done differently if trial counsel had objected to a breach of the plea agreement.").

"[C]riminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper,* 566 U.S. 156, 170 (2012). "While proper use of plea agreements is essential to the efficient administration of justice, improper use of the agreements threatens the liberty of the criminally accused as well as 'the

honor of the government' and 'public confidence in the fair administration of justice.'" *State v. Bearse*, 748 N.W.2d 211, 215 (Iowa 2008) (quoting *State v. Kuchenreuther*, 218 N.W.2d 621, 624 (Iowa 1974)). "Further, '[b]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance.'" *Id.* (alteration in original) (quoting *State v. Horness*, 600 N.W.2d 294, 298 (Iowa 1999)).

"The relevant inquiry in determining whether the prosecutor breached the plea agreement is whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *Boldon*, 954 N.W.2d at 71 (quoting *State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015)). "Plea bargains are akin to contracts." *State v. Beres*, 943 N.W.2d 575, 582 (Iowa 2020) (quoting *State v. Macke*, 933 N.W.2d 226, 238 (Iowa 2019) (Mansfield, J., concurring in part and dissenting in part)). Some plea agreements obligate the prosecutor to remain silent at sentencing and make no recommendation. *See, e.g.*, *State v. Fannon*, 799 N.W.2d 515, 518, 522–23 (Iowa 2011) (requiring resentencing because prosecutor breached agreement to "make no sentencing recommendation during the sentencing hearing"); *State v. Carrillo*, 597 N.W.2d 497, 500–01 (Iowa 1999) (per curiam) (holding state breached a "[buy]-your-silence kind of deal" under which the prosecutor would "remain silent at sentencing, and leave unchallenged Carrillo's request for suspended sentences" (alteration in original)). By contrast, here, the State agreed to follow

the recommendations for suspended sentences in the PSI report, and in reliance on that recommendation, Davis pleaded guilty.

"A fundamental component of plea bargaining is the prosecutor's obligation to comply with a promise to make a sentencing recommendation by doing more than 'simply inform[ing] the court of the promise the State has made to the defendant with respect to sentencing.' " *Bearse*, 748 N.W.2d at 215–16 (alteration in original) (quoting *Horness*, 600 N.W.2d at 299). The prosecutor "must actually fulfill the promise." *Id.* at 216. " '[V]iolations of either the terms or the spirit of the agreement' require reversal of the conviction or vacation of the sentence." *Fannon*, 799 N.W.2d at 520 (alteration in original) (quoting *Horness*, 600 N.W.2d at 298).

The four victim-impact statements in this case were properly included in the PSI report. Iowa Code § 915.21(1)(*a*) (providing that a "filed [victim] impact statement shall be included in the presentence investigation report"). The sentencing court was entitled to consider those statements. *Id.* § 901.5.[4] Davis argues the prosecutor undermined the plea agreement by reading the statements urging prison time word-for-word without herself advocating at all for suspended sentences. We agree the prosecutor breached the plea agreement by not actually recommending the district court suspend the sentences.

---

[4]The parents qualify as victims entitled to present victim-impact statements. Iowa Code § 915.10(3) (defining "victim" to include "immediate family members of a victim" who was under age eighteen at the time of the offense). Davis does not challenge the prosecutor's status as a "designated representative" under section 915.21(1)(*a*) to present the victim-impact statements to the court at sentencing.

The problem in this case is the juxtaposition of the prosecutor's perfunctory endorsement of the PSI report's recommendation for suspended sentences immediately after she read the four victim-impact statements calling for prison time, some urging the maximum sentences. The prosecutor should have followed her reading of those statements by *specifically recommending* suspended sentences and giving some reason in support of that recommendation. Instead she simply paid cryptic lip service to the plea agreement to abide by the PSI report's recommendation, without saying aloud the State supported suspended sentences.[5] This is not a case where the plea agreement merely obligated the prosecutor to remain silent and make no recommendation at the sentencing hearing. To the contrary, the State agreed to follow the PSI report's recommendation for suspended sentences, and we must hold the State to that commitment when Davis agreed to plead guilty "[i]n exchange for that recommendation."

Nothing in this opinion should be construed as undermining victims' rights. We are not holding the prosecutor breached the plea agreement by reading the victim-impact statements at sentencing. Rather, we hold the prosecutor breached the parties' plea agreement by failing to *recommend*

---

[5]The partial dissent relies on *State v. Bokenyi*, which concluded the prosecutor did not breach the state's plea agreement by referring to the victim's letter to the court. 848 N.W.2d 759, 773–74 (Wis. 2014). But in *Bokenyi*, the plea agreement allowed the prosecutor to request a prison sentence of up to four years, such that "the victim's wishes were not necessarily at odds with the State's sentencing recommendation." *Id.* at 773. The problem here is the prosecutor's failure to recommend suspended sentences as required under its plea agreement with Davis.

suspended sentences as the plea agreement and our precedent required. The State does not contend otherwise.

We do not mandate florid advocacy when the State agrees to recommend a particular sentence. But "[w]e have made clear the prosecutor must do more than simply recite the agreed recommended sentence." *Lopez*, 872 N.W.2d at 173. The prosecutor is required to "present the recommended sentence[ ] with his or her approval, to commend the sentence[ ] to the court, and to otherwise indicate to the court that the recommended sentence[ ] [is] supported by the State and worthy of the court's acceptance." *Id.* (alterations in original) (quoting *Bearse*, 748 N.W.2d at 216). We define the prosecutor's duty to "recommend" a sentence as follows:

> (1) "to mention or introduce as being worthy of acceptance, use, or trial," (2) "to make a commendatory statement about as being fit or worthy," (3) "to bring forward as being fit or worthy," (4) "present with approval," (5) "indicate as being one's choice for something or as otherwise having one's approval or support," (6) "offer or suggest as favored by oneself."

*Bearse*, 748 N.W.2d at 216 (quoting *Recommend, Webster's Third New International Dictionary* (unabr. ed. 1993)). This prosecutor fell short of that obligation. She said nothing to indicate that suspended sentences for Davis were worthy of the court's acceptance.

We reiterate our admonition to prosecutors in *Lopez*:

> If the prosecutor believes incarceration is appropriate, the State should not enter into a plea agreement to recommend probation. Iowans are entitled to expect the state will honor its plea agreements and sentencing recommendations that induce guilty pleas. Courts, to protect the integrity of our criminal justice system, must intervene when the government breaks its promises.

872 N.W.2d at 180. If the prosecutor believed Davis deserved incarceration, she should not have committed to recommending suspended sentences. Buyer's remorse does not excuse breaking a contract. "Our system of justice . . . does not allow prosecutors to make sentencing recommendations with a wink and a nod. The concept of justice has a far greater meaning." *Id.* at 173 (omission in original) (quoting *Fannon*, 799 N.W.2d at 523); *see also United States v. Brown*, 500 F.2d 375, 377 (4th Cir. 1974) (requiring the prosecutor's recommendation to be "expressed with some degree of advocacy").

The remedy for the State's breach is "resentencing by a different judge, with the prosecutor obligated to honor the plea agreement and sentencing recommendation." *Lopez*, 872 N.W.2d at 181. "As federal appellate courts have stated under similar circumstances, 'We intend no criticism of the district judge by this action, and none should be inferred.'" *Id.* (quoting *United States v. Cachucha*, 484 F.3d 1266, 1271 (10th Cir. 2007)).

**IV. Conclusion.**

For these reasons, we vacate the decision of the court of appeals and reinstate this appeal. We affirm Davis's convictions and vacate his sentence. We remand the case for resentencing by a different judge.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT OF CONVICTION AFFIRMED, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING.**

Appel, Mansfield, McDonald, and McDermott, JJ., join this opinion. Christensen, C.J., files an opinion concurring in part and dissenting in part, in which Oxley, J., joins.

**CHRISTENSEN, Chief Justice (concurring in part and dissenting in part).**

A plea agreement is not a tool to conceal the impact of a defendant's crime on his victims from the sentencing court. Thus, while I agree with the majority's holding in parts III.A and III.B that we can address Shane Davis's claim on direct appeal,[6] I cannot agree with the majority's decision in part III.C to disregard the rights of victims and turn prosecutors into cheerleaders for the defense when they recommend a sentence pursuant to a plea agreement.

"The relevant inquiry in determining whether the prosecutor breached the plea agreement is whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *State v. Boldon*, 954 N.W.2d 62, 71 (Iowa 2021) (quoting *State v. Frencher*, 873 N.W.2d 281, 284

---

[6]The outcome in this case should also serve as a lesson to the State, which apparently assumed we would decline to address Davis's claims on direct appeal when it chose not to present any argument on the merits of Davis's prosecutorial breach claim. The majority relies on the State's lack of argument—mentioning it four times—to support its conclusion that the prosecutor breached the plea agreement, improperly suggesting the State concedes the breach by "not contend[ing] otherwise." But the State was not required to make any argument, *see* Iowa R. App. P. 6.903(3) (allowing appellee to waive its right to file a brief at all), and the majority's suggestion that the State's silence amounted to a concession is unfounded.

Last term, we cautioned the state against this approach in *State v. Zacarias*, 958 N.W.2d 573, 587 n.3 (Iowa 2021), when the state relied solely on error preservation arguments in response to one of the defendant's arguments and did not brief the merits. There, we stated,

> This is the second case in as many months in which the State has relied on procedural arguments without responding to the merits of a defendant's claim. We caution against this approach. While the State's failure to brief the merits of an issue does not entitle the defendant "to a reversal as a matter of right, . . . the court may, within its discretion, handle the matter in a manner most consonant with justice and its own convenience."

*Id.* (omission in original) (quoting *Bowen v. Kaplan*, 237 N.W.2d 799, 801 (Iowa 1976)). That sentiment still stands.

(Iowa Ct. App. 2015)). Here, the plea agreement obligated the State to follow the sentencing recommendation in the presentence investigation (PSI) report, which recommended suspended sentences. That is exactly what the State did. No more and no less.

"Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). Notably, Iowa Code section 915.21(1)(*a*) (2019) requires the inclusion of victim-impact statements in PSI reports, and the sentencing court specifically asked the prosecutor if there were "[v]ictim impact statement[s] in this case." The sentencing court was going to receive these statements regardless of whether the prosecutor read them on the record or not, and Davis's attorney at sentencing acknowledged as much when he stated that he had "no objection" to the prosecutor reading the statements because "they [were] already attached to the presentence investigation report." *See State v. Phillips*, 561 N.W.2d 355, 359 (Iowa 1997) (holding the sentencing court could consider the oral statement from the victim's father at sentencing about the impact of the defendant's crime because it was "pertinent information" and "merely repeated information contained in written material already provided to both the court and defendant Phillips, who was present with counsel at the hearing").

As the majority recognizes, the sentencing court was entitled to consider those statements. Nothing in the plea agreement limited the State's ability to

read those victim-impact statements to the judge at sentencing. Nor did the State's agreement to follow the sentencing recommendation in the PSI report require it to disavow the victims' own sentencing recommendations as set forth in the victim-impact statements simply because they differed from the PSI report's recommended sentence.

Moreover, the majority fails to consider how important the rights of victims are within our criminal justice system. Just as our system has the responsibility to uphold the rights of the accused, it also has a "fundamental responsibility to victims and witnesses to . . . assist them in overcoming emotional and economic hardships resulting from criminal acts." *State v. Lopez*, 872 N.W.2d 159, 175 (Iowa 2015) (quoting 1986 Iowa Acts ch. 1178, § 1). This is why our legislature has enacted an entire chapter of the Iowa Code dedicated to victim's rights. *Id.*; *see also* Iowa Code chapter 915.

Iowa Code section 915.21(1)(*a*) allows victims to "present a victim impact statement to the court" by filing "a signed victim impact statement with the county attorney" that "shall be included in the presentence investigation report." "[I]t is essential to the purpose of the victim impact statement that the victim be given an opportunity to fully convey the impact a crime has had." *State v. Sailer*, 587 N.W.2d 756, 764 (Iowa 1998). Accordingly, "[u]nless requested otherwise by the victim, the victim impact statement shall be presented at the sentencing hearing in the presence of the defendant . . . . The victim impact statement may be presented by the victim or the victim's attorney or designated representative." Iowa Code § 915.21(1)(*a*). "When the term 'shall' appears in a statute, it generally

connotes the imposition of a mandatory duty." *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 771 (Iowa 2016). In contrast, the legislature's use of the term "may" in a statute is "ordinarily a permissive word." *Iowa Nat'l Indus. Loan Co. v. Iowa State Dep't of Revenue*, 224 N.W.2d 437, 440 (Iowa 1974). Thus, while the statute gives permission to the "victim or the victim's attorney or designated representative" to present victim-impact statements, it does not impose a limitation on who can present the statements such that the prosecutor in this case was prohibited from doing so. *See* Iowa Code § 915.21(1)(*a*); *cf. Kopecky v. Iowa Racing & Gaming Comm'n*, 891 N.W.2d 439, 444 (Iowa 2017) ("Given the proximity of the words 'may' and 'shall' in section 99F.7(11)(*a*), we conclude the intent of the legislature could not have been for 'may' to mean the same thing as 'shall.' ").

Prosecutors play a key role in ensuring compliance with Iowa's Victim Rights Act. *See, e.g.*, Iowa Code §§ 915.12(1) ("The county attorney shall notify the victims in writing and advise them of their registration and rights under this subchapter. The county attorney shall provide a registered victim list to the offices, agencies, and departments required to provide information under this subchapter for notification purposes."), .13 (imposing requirements on the county attorney to notify victims registered with the county attorney's office of various rights, including the right to present victim-impact statements). A "prosecutor has no right or duty to prevent victim-impact statements allowed by the Code." *Lopez*, 872 N.W.2d at 174. Likewise, "prosecutor[s], regardless of any plea agreement, cannot block victims or their properly designated

representatives from giving victim-impact statements allowed by chapter 915." *Id.* at 178.

"Because victim rights compliance is essential to the sentencing hearing and the factors that a court must weigh in exercising its discretion, consideration of and commentary regarding the victim's wishes may be relevant and appropriate at the sentencing." *State v. Bokenyi*, 848 N.W.2d 759, 772 (Wis. 2014). "In fact, a victim's wishes may often come to bear in considering the need to protect the public." *Id.* at 773. Thus, "[a] prosecutor's reference to a victim's letter will not automatically operate as a breach of the plea agreement." *Id.*

For example, in *State v. Bokenyi*, the State of Wisconsin agreed to "limit its sentencing recommendation to 'the high end range of the PSI' " in exchange for the defendant's guilty plea to three of the ten charges against him. *Id.* at 764. "Prior to offering argument on the sentence" at the sentencing hearing, "the prosecutor read aloud a letter to the court from Sherri, the victim" about the fear that she and her son—another victim—faced when thinking about "the day [the defendant] will get out [to the public]." *Id.* at 764–65. The state concluded its argument by making a sentencing recommendation that was "at the 'high end range' of the PSI" as agreed upon in the plea agreement. *Id.* at 766.

On appeal, the Wisconsin Supreme Court rejected a similar argument to the one Davis now makes that the prosecutor breached the plea agreement by reading part of the victim's letter at sentencing because "the prosecutor went beyond reciting the victim's wishes and instead adopted them as his own." *Id.* at 773. The court explained that the prosecutor's sentencing recommendation was

consistent with the plea agreement, and the prosecutor's reference to the victim's letter did "not translate into a request for a longer sentence." *Id.* Instead, the court reasoned that "[t]he prosecutor used the letter as a way to illustrate 'the need to protect the public' from Bokenyi, a proper factor for consideration at sentencing." *Id.* Similarly, the prosecutor's reading of the victim-impact statements at Davis's sentencing hearing did "not translate into a request for a longer sentence." *Id.*; *see also Phillips*, 561 N.W.2d at 359 (holding the victim's father's statements at the sentencing hearing qualified as pertinent information for the sentencing court to consider).

In reaching the opposite conclusion, the majority overlooks dispositive differences between this case and our precedent, particularly *State v. Lopez*. There, the prosecutor introduced photos into evidence of a "child's burn, bite mark, and bruises inflicted by Lopez" at the sentencing hearing when cross-examining the defendant's character witnesses that the sentencing judge would not have otherwise seen. *Lopez*, 872 N.W.2d at 178–81. The prosecutor engaged in vigorous cross-examination of the character witnesses to imply "that Lopez still had anger issues and might hurt another child if released on probation." *Id.* at 179. For instance, the prosecutor asked one witness "if he had seen the photos [of the child's injuries,] and then showed them to him, stating, 'It's pretty horrible to do to a little 2-year-old, isn't it?'" *Id.* Rightfully so, we held that "[t]he prosecutor's conduct was flatly inconsistent with the State's plea agreement to recommend probation." *Id.* To support our holding, we cited *State v. Urista*, a Kansas Supreme Court opinion, in which the court "held a prosecutor breached

a plea agreement she had correctly recited by [describing the defendant as a very dangerous man with absolutely no remorse, which] 'effectively undermined the sentencing recommendation.' " *Id.* (quoting *State v. Urista*, 293 P.3d 738, 750, 759 (Kan. 2013)).

But the prosecutor's actions in this case are a far cry from the actions in *Lopez* and *Urista*. Unlike those prosecutors, the prosecutor at Davis's hearing never introduced evidence that the sentencing court would not have otherwise seen or made negative comments about the defendant through her own advocacy to undermine the State's sentencing recommendation. Despite the victims' calls for a harsher sentence, the prosecutor herself never advocated for a harsher sentence than the PSI report's recommended sentence, acting in compliance with the plea agreement. The prosecutor took none of the following actions that our appellate courts have previously held amounts to a breach of the plea agreement: "proposing alternative sentences; by requesting 'an appropriate sentence' rather than the agreed-upon sentence; by making a recommendation and then reminding the court it is not bound by the plea agreement; or by emphasizing a more severe punishment recommended by the presentence investigation author." *Frencher*, 873 N.W.2d at 285. Had the court asked if the prosecutor agreed with the victims' sentencing recommendations and then the prosecutor agreed or in any other way endorsed said recommendation, the prosecutor would have expressed a material reservation of the plea agreement in violation of our precedent. *Id.*; *see Boldon*, 954 N.W.2d at 71–72 (discussing how a prosecutor

breaches a plea agreement by expressly or implicitly expressing a material reservation about the recommendation).

The prosecutor did not—as the majority misrepresents—pay "cryptic lip service" to the plea agreement after reading the victims' statements. To the contrary, immediately after the prosecutor finished the last victim statement with, "Sincerely, [A.T.]," reinforcing that she was reading the victim's words, the court asked for the State's recommendation. The prosecutor's next words were: "Thank you, Your Honor. Your Honor, in this case the plea agreement was that the State would follow the recommendation made by the presentence investigation, so the State would join in those recommendations being made." It is highly unlikely the State would "join" the recommendations of the PSI report if the State did not believe those recommendations were "worthy of acceptance." *State v. Bearse*, 748 N.W.2d 211, 216 (Iowa 2008) (quoting *Recommend*, *Webster's Third New International Dictionary* (unabr. ed. 1993)); *see Join*, *Webster's Third New International Dictionary* (unabr. ed. 2002) ("to connect or associate with"). By "joining" in the recommendations of the PSI report, the prosecutor directly followed the requirements of the plea agreement (The State "agrees to follow the recommendations of a Presentence Investigation Report") and indicated to the court that the PSI report's recommendation was "supported by the State and worthy of the court's acceptance." *Bearse*, 748 N.W.2d at 216 (quoting *State v. Horness*, 600 N.W.2d 294, 299 (Iowa 1999)). Nothing in the plea agreement required the State to act as an advocate for a certain sentence beyond simply following the sentencing recommendation in the PSI report, and the State

did as it agreed when the prosecutor explicitly declared that the State would follow and join in the recommendations being made in the PSI report. The cold record does not support the majority's supposition that the prosecutor paid "cryptic lip service."

The majority's holding that the prosecutor had to explicitly recommend "suspended sentences" instead of expressing her recommendation to go along with the PSI report's recommendation, which of course recommended suspended sentences, sorely underestimates the ability of Iowa's sentencing judges to read PSI reports. Further, the majority's conclusion that the prosecutor's reading of the victim-impact statements and subsequently joining the PSI report's recommendation amounted to a "juxtaposition" takes for granted the ability of sentencing judges to distinguish between the prosecutor's own statements and what the prosecutor made clear were statements from the victims. *Cf. Sailer*, 587 N.W.2d at 764 ("[W]e trust that our district courts, when weighing such [victim-impact] statements as part of the sentencing determination, will filter out improper or irrelevant evidence.").

Finally, the majority goes too far in holding that the prosecutor should not only have specifically recommended suspended sentences but also that she should have given "some reason in support of that recommendation." The defendant had his own legal counsel to justify that recommendation. "The State's recommendation . . . carries with it the State's implicit representation it is 'worthy of the court's acceptance'" absent behavior to the contrary—behavior that was not present here. *State v. Schlachter*, 884 N.W.2d 782, 786 (Iowa Ct.

App. 2016) (quoting *Horness*, 600 N.W.2d at 299); *see also Boldon*, 954 N.W.2d at 71–72. "To conclude otherwise is to question the integrity of the prosecutor." *Schlachter*, 884 N.W.2d at 786–87. "To have its sentence set aside because the prosecutor did not advocate for the plea agreement beyond making a clear-cut, unqualified recommendation impinges on the sentencing court's prerogative and responsibility." *Id.* at 786.

Victims have the statutory right to convey their experiences and recommendations to the sentencing court. Oftentimes, those recommendations will be the maximum punishment. But we cannot equate the victim's advocacy for punishment to the prosecutor's recommendation at sentencing. To do so would undercut the purpose of victim-impact statements and undermine the autonomy of the victim's experiences and recommendations. For these reasons, I cannot agree with the majority that the prosecutor breached the plea agreement by reading victim-impact statements at sentencing that were already part of the PSI report before the sentencing court.

Oxley, J., joins this concurrence in part and dissent in part.